United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-3955

_____

United States of America,        *
                                            *

            Appellee,       *

                             *    Appeal from the United States
     v.                       *    District Court for the
                             *    District of Minnesota.

David Alban Mahler,        *

                             *

            Appellant.     *

                             *

_____

Submitted: November 17, 1997
Filed:  April 1, 1998

_____

Before BEAM, HEANEY, and JOHN R. GIBSON, Circuit Judges.

_____

BEAM, Circuit Judge.

David Mahler appeals his conviction on four counts of drug-trafficking.  He asserts that the district court[1] erred in denying his motion to suppress evidence and in allowing an eleven-person jury to return a verdict.  We affirm.

---

[1]The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota, sitting by designation.

## I.    BACKGROUND

David Mahler and his roommate, Richard Westby, conducted a significant drug distribution operation from a one-bedroom apartment in St. Louis Park, Minnesota. They sold cocaine, marijuana, and methamphetamine to persons who would resell the drugs at a profit. Mahler and Westby kept a small inventory of the drugs at their apartment and warehoused their remaining supply in three storage units at two different storage facilities in the Minneapolis area.

On March 25, 1995, an investigator with the Minneapolis-St. Paul Airport Police Department (Airport Police), acting on a tip, questioned two suspects who had exited a flight arriving from San Diego. The suspects consented to a search of the four large suitcases that they were carrying. The suitcases contained twenty-six bricks of marijuana which weighed approximately 115 pounds. The two drug couriers agreed to cooperate with the police and deliver the drugs to the purchaser as planned. From a nearby hotel, one of the couriers placed a telephone call to a number listed in Mahler's name. The courier spoke with a person identified as "Richard." Within minutes, Westby arrived at the hotel in a van. After Westby inspected the suitcases and started carrying them toward the van, the police arrested him. The van contained an invoice which indicated that it had been purchased with cash and that Mahler and Westby were its co-owners. The invoice additionally listed the co-owners' address as the St. Louis Park apartment that was leased under Mahler's name.

On May 24, 1995, Detective Robert Dole, of the Hopkins Police Department, obtained a search warrant for that apartment.[2] The supporting affidavit revealed the

_____

[2]The record shows that the St. Louis Park Police Department, the Hopkins Police Department, the Federal Bureau of Investigation, and the Airport Police Department jointly investigated Mahler and Westby. Hopkins and St. Louis Park are suburbs of Minneapolis.

following: that Westby had been arrested while transporting marijuana toward a van which he and Mahler had paid for in cash; that a confidential informant described, with specificity, drug transactions taking place at the apartment which Mahler and Westby shared; that police surveillance observed what appeared to be two drug transactions taking place at the apartment; and that Westby had deposited $78,718 in cash at various New York City banks from 1993-1994.

After he conducted surveillance on the small one-bedroom apartment, but before he executed the search warrant, Detective Dole discovered that two storage units at a St. Louis Park storage facility and another unit at a Minnetonka, Minnesota, storage facility had been leased by either Mahler or Westby. At the St. Louis Park facility, Mahler had leased unit #2217 and Westby had leased unit #6126. Mahler had also leased unit #4104 at the Minnetonka facility. On May 30, 1995, the Airport Police brought a narcotics certified canine drug detection team to the storage units. The canine gave a positive indication for drugs at both storage units leased by Mahler and a negative indication for the unit leased by Westby.

On May 30, 1995, Detective Dole obtained additional search warrants for each of the storage facilities. The affidavits in support of these search warrants contained the same information as the supporting affidavit for the apartment search warrant. The affidavits additionally set forth the existence of the storage units, the use of the narcotics certified canine team, the indications given by the canine at the storage units, and the fact that Mahler had traveled with no luggage from Los Angeles to Minneapolis on a ticket paid for in cash, with a return flight the following day. The affidavits did not specifically set forth that Mahler and Westby had leased the storage units. The police executed the warrants that day.

First, they searched Mahler's storage unit at the St. Louis Park facility. Inside, they discovered a duffel bag containing ephedrine, which is a precursor chemical to methamphetamine, a triple beam scale, a shotgun, and marijuana residue. Next, they

-3-

searched Westby's storage unit at the same facility. That locker contained six suitcases; each containing six bricks of marijuana. Next, the police searched Mahler's storage unit at the Minnetonka facility. It contained ninety-three bricks of marijuana. Finally, the police searched the apartment where they found approximately one and one-half pounds of cocaine, two pounds of marijuana, $26,235 in cash, a 9-millimeter handgun, drug notes, and various other items indicating that drugs were sold from the apartment.

The jury convicted Mahler on four counts of drug trafficking charges and one count of using a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c). This court subsequently vacated Mahler's section 924(c) conviction. See United States v. Mahler, No. 95-4225 (8th Cir. June 26, 1996).[3]

On appeal, Mahler raises two points of error. First, he asserts that the district court[4] erroneously denied his pre-trial motion to suppress the evidence seized at the storage units that he had leased because the search warrants were not supported by probable cause.[5] Second, he asserts that the district court erroneously permitted an eleven-person jury to return a verdict.

---

[3]Westby failed to appear for a hearing on these charges and his whereabouts remain unknown.

[4]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota adopting the Report and Recommendation of the Honorable John M. Mason, United States Magistrate Judge for the District of Minnesota. Judge Davis presided over this pre-trial motion and Judge Van Sickle conducted the trial.

[5]Mahler does not challenge the admissibility of the evidence seized at the storage unit leased by Westby or at the apartment they shared.

## II. DISCUSSION

### A. Motion to Suppress

Mahler first contends that the district court should have suppressed the evidence seized at the storage units that he had leased because the search warrants were not supported by probable cause. We disagree.

We review for clear error a district court's decision not to suppress evidence obtained during the execution of a search warrant. See United States v. Barr, 32 F.3d 1320, 1322 (8th Cir. 1994). We must give substantial deference to the issuing judge's determination of probable cause and allow that determination to stand unless the issuing judge lacked a substantial basis for concluding that probable cause existed. See Illinois v. Gates, 462 U.S. 213, 236, 238-39 (1983). A warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found" in the place to be searched. Id. at 238.

The supporting affidavits contained evidence of significant drug transactions taking place at, or otherwise involving, Mahler's apartment, including evidence showing the involvement of both Mahler and Westby. The affidavits additionally revealed the existence of the storage units, the positive indications given by the canine, and the fact that the canine team is narcotics certified. Because the canine's positive indications were not the only evidence supporting a finding of probable cause, we find that the absence of more detailed information about the reliability of the canine team did not preclude a determination of probable cause. See United States v. Moore, 911 F.2d 140, 145 (8th Cir. 1990) (noting that positive indication for narcotics given by "certified canine drug detection unit" supports a finding of probable cause); United States v. Daniel, 982 F.2d 146, 151 (5th Cir. 1993) (same).

The affidavits did not specify who had leased each unit. Nonetheless, the issuing judge could reasonably infer that the units were leased by either of the suspects whose drug activities were outlined in the other one and one-half pages of the affidavits. Based on a totality of the circumstances, the district court did not commit clear error in finding substantial basis for the issuing judge's conclusion that probable cause existed to search the storage units.

## B. Eleven-Person Jury

Mahler asserts that the district court erred in permitting an eleven-person jury to return a verdict. Because Mahler's counsel expressly approved of the jury before it began deliberations without the absent twelfth member, we find no reversible error.

In a pre-trial conference, Mahler, his counsel, and the government orally consented to an eleven-person jury. At the conference, the following colloquy occurred:

> [The Court:] What this amounts to, if you agree then, if we start out with 12 jurors and one gets sick or has to be excused, can you accept a unanimous verdict of eleven, which is one less than 12?
>
> [Mahler:] I don't have any trouble with that.

Tr. of Hr'g at 9 (September 11, 1995). Consequently, the district court did not empanel any alternate jurors.

When one juror failed to appear for the second day of the jury's deliberations, the district court proposed recessing the jury for two hours. In the event that the juror's whereabouts remained unknown, the district court further suggested that counsel stipulate that "the jury shall go forward and consider and reach their verdict in [the

juror's] absence." The record shows that counsel for the defendant and the government expressly consented to this arrangement, but again did not reduce this stipulation to writing. The juror's whereabouts remained unknown at 11:00 a.m. At that time, the district court again asked counsel whether it was satisfactory to proceed with eleven jurors. Both orally agreed on the record to the eleven-person jury.

The right to trial by a jury of twelve persons primarily protects the rights of the accused. See Patton v. United States, 281 U.S. 276, 297 (1930). Accordingly, this right may be waived by the defendant. See id. at 298. "[B]efore any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant." Id. at 312. The Supreme Court has never mandated a written requirement for such waivers. Nonetheless, Federal Rule of Criminal Procedure 23(b) provides that:

> Jury of Less Than Twelve. Juries shall be of 12 but at any time before verdict the parties may stipulate in writing with the approval of the court that the jury shall consist of any number less than 12 or that a valid verdict may be returned by a jury of less than 12 should the court find it necessary to excuse one or more jurors for any just cause after trial commences. Even absent such stipulation, if the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors.

Fed. R. Crim. P. 23(b). Thus, under Rule 23(b), a jury of eleven may return a valid verdict if the parties properly consent to the smaller jury or the judge finds it necessary, after deliberations commence, to excuse a juror for just cause.

Mahler asserts that without a finding of just cause to excuse the absent juror, the eleven-person verdict is invalid under either sentence of Rule 23(b). First, Mahler asserts that his oral consent, even if valid, was conditioned upon a finding of just cause

to excuse the juror. Next, Mahler asserts that, in the absence of proper consent, the district court must have just cause to excuse the juror and authorize an eleven-person verdict. See Fed. R. Crim. P. 23(b). Regardless of the substance of Mahler's assertion, he cannot receive relief here because the asserted error was invited by Mahler's counsel.[6]

The doctrine of invited error applies when "the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action." See United States v. Ahmad, 974 F.2d 1163, 1165 (9th Cir. 1992) (applying invited error analysis to an assertion that the district court abused its discretion in finding just cause to dismiss a juror under Rule 23(b)); see also United States v. Martinez, 3 F.3d 1191, 1199 (8th Cir. 1993) (applying invited error analysis to an evidentiary issue). The record shows that Mahler's counsel expressly consented to the eleven-person jury on two separate occasions after the district court announced its intention to continue the deliberations without the missing juror. Thus, the asserted error was twice invited and, in light of Mahler's pre-trial oral consent to the eleven-person jury, it does not warrant reversal. See Ahmad, 974 F.2d at 1165.

After careful review, we find no merit in Mahler's remaining arguments.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

---

[6]In light of our finding, we need not address whether a defendant's oral consent, appearing on the record, waives the right to a twelve person jury. See United States v. Roby, 592 F.2d 406, 409 (8th Cir. 1979) (McMillian, J., dissenting) (stating that express oral consent given by the defendant personally and appearing on the record would effectuate a waiver).

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.