# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2514

_____

Albert David Matthew, M.D.,      *
                                      *

      Plaintiff - Appellee,     *

                                        *   Appeal from the United States
    v.                                *   District Court for the
                                        *   District of Minnesota.

Unum Life Insurance Company   *
of America,                       *
                                        *

      Defendant - Appellant.   *

_____

Submitted: February 17, 2011
Filed: April 25, 2011

_____

Before LOKEN, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Albert David Matthew, M.D. ("Matthew"), a urologic surgeon, brought this action against Unum Life Insurance Company ("Unum"), seeking disability benefits under the terms of his disability insurance policy with Unum. The case was tried to a jury, which found that Matthew was entitled to residual disability benefits. Unum appeals several district court orders following the verdict. Specifically, Unum contends the district court erred in granting Matthew's post-trial motion to correct the special verdict, in awarding prejudgment interest, and in denying Unum's post-trial motions for judgment as a matter of law, a new trial and declaration of a mistrial. For the reasons stated below, we affirm in part and reverse in part.

## I. *Background*

On March 27, 1990, Unum issued a disability income policy ("the Policy") to Matthew. Pursuant to the Policy, Unum was obligated to pay Matthew "the Monthly Benefit Amount" in any month after an initial ninety-day "elimination period" that Matthew was "totally disabled or experience[d] at least a 20% loss of net income in his regular occupation as a result of a present injury or sickness." Under the terms of the Policy,

> 'Gross revenue' means any income received by the Insured or his business for personal services performed by him in his regular occupation.[1] . . .
>
> 'Net income' means gross revenue minus the Insured's share of the usual and customary business expenses which he or his company incurs on a regular basis and are essential to his established business operation. . . .
>
> 'Prior net income' means the largest of: (1) the Insured's average monthly net income for the last 12 months before the Elimination Period began; (2) the Insured's average monthly net income for the 12-month period immediately before those 12 months; or (3) the highest average monthly net income for any two consecutive years of the last 5 years before the Elimination Period began. . . .

---

[1] A November 2001 enhancement to the Policy changed the definition of "gross revenue" to "any income earned by the Insured or his business for personal services performed by him in his regular occupation."

'Loss of net income' means the Insured's indexed[2] prior net income minus the net income he received for the month to which a payment relates. . . .

'Regular occupation' means the Insured's occupation at the time the Elimination Period begins. . . .

Before becoming disabled, Matthew practiced as a urologic surgeon for eighteen years. He was the founding partner of Adult & Pediatric Urology, PLLP ("APU") in St. Cloud, Minnesota, where his practice involved in-office consultations and procedures as well as surgeries. Following an ankle injury in 1993, Matthew developed a degenerative ankle condition, which caused the major weight-supporting bone in his ankle to deteriorate and, eventually, collapse. This interfered with Matthew's ability to walk or stand at the operating table for any prolonged period of time. In 1996, on the advice of his treating doctor, Matthew stopped doing surgical procedures that required standing for more than an hour and a half.

On August 22, 1996, Matthew advised Unum in writing that he intended to make a claim for disability benefits under the Policy, and on February 19, 1997, he submitted a disability claim to Unum requesting total disability benefits. According to the Policy,

'Total disability' and 'totally disabled' mean injury or sickness restricts the Insured's ability to perform the material and substantial duties of his

---

[2]Under the Policy, "prior net income" is indexed to the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics ("CPI-U"). A new "CPI-U Factor" is calculated on each anniversary of the first day of a period of disability. The CPI-U Factor is the ratio of the most recently published CPI-U to the last CPI-U published in the calendar year before disability began. Prior net income is multiplied by the relevant CPI-U Factor before being used to calculate the Maximum Disability Benefit.

regular occupation to an extent that prevents him from engaging in his regular occupation.

'Residual disability' and 'residually disabled' mean injury or sickness does not prevent the Insured from engaging in his regular occupation, BUT does restrict his ability to perform the material and substantial duties of his regular occupation: (i) for as long a time as he customarily performed them before the injury or sickness; or (ii) as effectively as he customarily performed them before the injury or sickness.

The amount of benefits owed under the Policy is calculated differently depending on the extent of Matthew's disability. In any given month, if Matthew "is totally disabled or [his] loss of net income is 75% or more," Unum is required to pay "the Maximum Disability Benefit," which is a fixed dollar amount of $11,924, for that month. If, however, Matthew's "loss of net income is less than 75% but at least 20%," the amount payable is determined by the following formula:

$$\frac{\text{loss of net income}}{\text{prior net income}} \times \text{Maximum Disability Benefit}$$

In March, June, July and August of 1997, Unum requested certain financial information from Matthew, including copies of Matthew's office billing records, appointment book, surgical schedules, and his personal and business tax returns. The record reflects that Matthew signed releases allowing Unum to request his surgical schedules from the hospitals at which he worked, and that Unum received Matthew's surgical schedules for the period January 1, 1995 to April 2, 1997 from Columbia St. Cloud Surgical Center. However, Matthew refused to provide his personal or business tax returns, arguing that they were not relevant to his entitlement to benefits.

On August 19, 1997, Unum notified Matthew that it did not have the necessary financial information to determine whether he was totally or residually disabled under the Policy. Unum renewed its request for copies of Matthew's billing records and

appointment book and advised Matthew's counsel that "failure to provide this information may result in our inability to make a liability decision on Dr. Matthew's claim." On September 19, 1997, Unum warned that failure to provide additional information by September 26, 1997 "will result in the closing of our handling of Dr. Matthew's claim file." On September 29, 1997, Unum indicated that because it had received no additional information from Matthew, it was unable to accurately adjudicate Matthew's claim and, therefore, could not provide residual or total disability benefits to Matthew. However, Unum invited Matthew to forward any additional information to its office at any time for prompt review.

On September 23, 2004, represented by new counsel, Matthew renewed his request for disability benefits under the Policy, and provided Unum with summary financial records for APU dating back to 1997. These records showed both income earned by Matthew in providing professional services to his patients and passive income distributed to him as a partner of APU under APU's profit-sharing arrangement. On April 20, 2005, Matthew furnished Unum with his production billing records dating back to 1996, excluding the records already provided. However, Matthew continued to resist providing his personal and business tax returns. On May 2, 2005, Unum advised Matthew that without his tax returns, it was unable to accurately calculate his prior monthly income and current monthly income for purposes of determining whether there was a loss of income of at least twenty percent or greater for the claimed period of disability. Nevertheless, Unum agreed to issue total disability benefits from September 23, 2004 onwards under a reservation of rights.[3] On May 16, 2005, Matthew provided Unum with his personal and business tax returns for the tax years 1991 through 2003. Thereafter, he provided tax returns for 2004 and 2005.

---

[3]Unum treated September 23, 2004 as the date of disability. Thus, the ninety-day elimination period meant that Matthew did not begin actually receiving benefits until December of 2004.

On May 2, 2008, Unum concluded that Matthew became totally disabled within the meaning of the Policy on July 12, 2005 because that was the date on which he stopped working completely due to his condition. Unum further determined that Matthew did not qualify for residual disability benefits prior to July 12, 2005 because he did not incur a twenty percent or more loss in net earnings for the years 1996 through 2005. Therefore, Unum requested that Matthew repay the benefits he had been paid under a reservation of rights for the period September 23, 2004 through July 11, 2005.

On June 11, 2008, Matthew commenced the instant action in the District Court for the District of Minnesota, seeking total disability benefits or, in the alternative, residual disability benefits, for the period October 1, 1996 through July 11, 2005. Unum counter-claimed for repayment of $114,470.48 in benefits already paid to Matthew under a reservation of rights. Specifically, Unum sought $83,474 in benefits paid to Matthew before July 12, 2005, as well as benefits paid to him during the ninety days afer July 12, 2005, under the theory that the Policy's ninety-day elimination period should have started on that date. The district court denied the parties' cross motions for summary judgment, and the matter was tried to a jury beginning on January 4, 2010.

At trial, Unum argued that Matthew was not entitled to residual disability benefits because his tax returns demonstrated that his taxable income did not decrease by twenty percent or more after 1996. Matthew argued that he was entitled to residual disability benefits from October 1, 1996 onwards because the revenue generated from services that he himself performed declined by twenty percent or more after that date. He pointed to APU's allocation sheets, which showed that, as a result of his injury, his personal production declined from twenty-five percent of the APU partners' overall production in 1995, when APU had four partners, to eight-and-a-half percent in 1999, when there were six partners, and three percent in 2004, when, again, there were six partners. Matthew argued that his taxable income was irrelevant

because it included his distribution of partnership profits, which was a proportion of the revenue generated by APU's combined staff and, therefore, did not reflect the decline in revenue generated from personal services performed by Matthew, as required by the Policy's definition of "net income." Applying the formula set out in the Policy, Matthew calculated that he was owed a total of $1,006,380.70 in disability benefits for the period October 1, 1996 through July 11, 2005.

The jury determined that Matthew met the definition of total disability under the Policy from December 1, 2004 to the present, and that he was entitled to residual disability benefits for the period October 1, 1996 through December 1, 2004. On the special verdict form, the jury indicated that Matthew was entitled to receive "$1,006,380" in residual disability benefits less "$114,000 already paid," which "equals $892,380." The special verdict form also asked: "Did Dr. Matthew receive disability benefits from Unum for the period from September 23, 2004, to October 10, 2005, to which he was not entitled?" In answer, the jury crossed out the word "September," replaced it with the word "December," and checked the answer "No."

Following the jury verdict, the district court granted Matthew's motion to correct the special verdict to reflect the amount of $922,906 as the residual disability benefits awarded to Matthew. The district court also awarded prejudgment interest in the amount of $498,340 on Matthew's residual disability claim. The court denied Unum's post-trial motions for judgment as a matter of law, a new trial, and a declaration of a mistrial. Unum appeals each of these post-trial orders.

## II. *Discussion*

### A. *Correction of the Special Verdict*

Unum contends that the district court erred in amending the judgment pursuant to Fed. R. Civ. P. 59(e).[4] "Rule 59(e) motions serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation marks omitted). "[A] district court has broad discretion to alter or amend a judgment under Rule 59(e), and we will reverse only for a clear abuse of discretion." SFH, Inc. v. Millard Refrigerated Servs., Inc., 339 F.3d 738, 746 (8th Cir. 2003). "An abuse of discretion occurs where the district court fails to consider an important factor, gives significant weight to an irrelevant or improper factor, or commits a clear error of judgment in weighing those factors." Kurka v. Iowa Cnty., Iowa, 628 F.3d 953, 957 (8th Cir. 2010) (internal quotation marks omitted); see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) ("An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." (internal quotation marks omitted)).

The district court determined that the jury accepted Matthew's calculation of the residual disability benefits owed for the period October 1, 1996 through July 11, 2005, but made a mistake regarding the amount of damages that Unum had already paid to Matthew under a reservation of rights for the period September 23, 2004 through July 11, 2005. On the special verdict form, the jury indicated that Matthew was entitled to "$1,006,380 - $114,000 ALREADY PAID EQUALS $892,380.00."

---

[4]The district court converted Matthew's Fed. R. Civ. P. 60(a) motion to correct the special verdict to a motion under Rule 59(e).

As the district court correctly observed, however, Unum had paid Matthew only $83,474 for the period September 23, 2004 through July 12, 2005.[5]

The source of the jury's confusion is readily apparent. During closing arguments, Unum's counsel argued that the total damages figure offered by Matthew should be reduced because it included December of 2004 and the first six months of 2005. Counsel reminded the jury that Unum had already paid Matthew disability benefits for those seven months and explained, incorrectly, "[t]hat is the $114,000 that Unum is asking to get back in its overpayment claim." Later, counsel elaborated, "Unum is seeking to recover the benefits paid for the disability period from September 23, 2004 through July 11, 2005. And I believe the specific number is written down in one of your exhibits, but it is about $114,000." Counsel for Matthew compounded the problem in his own closing argument by accepting that the amount Unum had already paid for the period September 23, 2004 through July 11, 2005 should be deducted from Matthew's total damages figure, but then repeating the incorrect $114,000 figure as the amount that should be deducted to account for the benefits already paid for that period.

The district court did not clearly abuse its discretion in finding that the jury intended to award Matthew $1,006,380 less the amount Unum had already paid for the period December 1, 2004 through July 11, 2005, and that the jury incorrectly believed that Unum had paid Matthew $114,000 for that period. The district court's finding is supported by the jury's response to Question Six on the special verdict form, which indicated that Matthew had not received disability benefits for the period December 23, 2004 through October 10, 2005 to which he was not entitled. In amending the judgment to reflect the amount of $922,906 as the residual disability

---

[5]After allowing for the ninety-day elimination period, Unum paid Matthew total disability benefits for December of 2004 and the first six months of 2005, totaling $83,474. Unum does not contest this point on appeal.

benefits awarded to Matthew, the district court was merely correcting a mistake that appeared on the face of the verdict. We cannot say that this was a clear abuse of discretion.

## B. *Prejudgment Interest*

Unum contends that the district court erred in awarding prejudgment interest under Minnesota common law.[6] "Because this is a diversity action, Minnesota law controls the award of prejudgment interest." Children's Broad. Corp. v. Walt Disney Co., 357 F.3d 860, 869 (8th Cir. 2004). Under Minnesota common law, prejudgment interest running from the date the claim accrued may be awarded "in the case of unliquidated claims only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion." Potter v. Hartzell Propeller, Inc., 189 N.W.2d 499, 504 (Minn. 1971); see also Nw. Airlines, Inc. v. Flight Trails, 3 F.3d 292, 297 (8th Cir. 1993). The district court's determination that Matthew's claim was readily ascertainable is a factual finding reviewed for clear error. Ventura v. Titan Sports, Inc., 65 F.3d 725, 735 (8th Cir. 1995); Nw. Airlines, 3 F.3d at 298.

In Ventura, a jury awarded unpaid royalties to a wrestler after finding that the defendant exploited his name, voice, and likeness in videotapes of wrestling matches and on other merchandise without authorization. 65 F.3d at 728. We found that "[a]lthough . . . the ultimate award of damages was made by reference to objective standards (market value), there [were] sufficient questions to prevent it from being 'readily ascertainable,' thereby precluding an award of prejudgment interest." Id. at

---

[6]Unum concedes that as a matter of statutory law, Matthew is entitled to prejudgment interest from the commencement of the action through the entry of judgment. See Minn. Stat. § 549.09. Thus, we limit our review to the award of prejudgment interest under Minnesota common law.

735. Specifically, the jury was required to resolve contingencies including the precise royalty rate and unsettled payment details, such as the wholesale sales base, the categorization of tapes upon which the wrestler appeared in multiple roles, and the time periods for accrual and payment of royalties. Id.; see also Bitronics Sales Co. v. Microsemiconductor Corp., 610 F. Supp. 550, 555 (D. Minn. 1985) (finding plaintiff's claim not readily ascertainable because ambiguities in a commission agreement included the length of the required notice period preceding termination; "whether commissions were earned only on those orders shipped prior to the end of the termination period; and whether the commission rate was at five or seven percent"). In Unique Systems, Inc. v. Zotos International, Inc., the plaintiff, a distributor of beauty products, was awarded lost-profits damages incurred when the defendant breached a contract to develop, manufacture and deliver a novel hair-spray system for use in beauty salons. 622 F.2d 373 (8th Cir. 1980). We held that damages were not readily ascertainable because the court had to resolve contingencies including: whether damages could be awarded for lost profits on a product which had never been manufactured and did not even exist in finished form; whether the cost bids and estimates used to compute lost profits were sufficiently reliable; and what was the estimated life span for the hair-spray systems. Id. at 380.

We have also held, along with Minnesota state courts, that damages are not readily ascertainable when there exist numerous methods of computing damages which reach vastly different results. Hutchinson Utilities Comm'n v. Curtiss-Wright Corp., 775 F.2d 231, 242 (8th Cir. 1985) (finding damages not readily ascertainable where plaintiff's two different methods of computing damages would have resulted in a recovery of either $2.1 million or $2.8 million); N-Ren Corp. v. Am. Home Assurance Co., 619 F.2d 784, 789 (8th Cir. 1980) (four different damage figures submitted); Alley Constr. Co. v. State, 219 N.W.2d 922, 927 (Minn. 1974) (finding damages not readily ascertainable where plaintiff suggested three different methods of calculating damages which produced damage figures ranging from $431,898 to $624,148); see also Keegan v. Fischer Constr. Co., 223 N.W.2d 141, 142 (Minn.

1974) (finding prefiling interest unavailable where jury was required to resolve questions of fact as to the proper method of calculating damages). Minnesota cases have further found that very large variations in estimated damages preclude an award of prefiling interest. See, e.g., Ventura, 65 F.3d at 736 (denying prefiling interest where plaintiff's damages estimates varied by over two hundred percent, from $865,723 to $1,855,121); Potter, 189 N.W.2d at 504 (finding damages not readily ascertainable where estimates ranged from $45,000 to $95,000); Hogs Unlimited v. Farm Bureau Mut. Ins. Co., 401 N.W.2d 381, 387 (Minn. 1987) (reversing award of prefiling interest where estimated damages varied from $218,500 to $428,250).

The district court's determination that Matthew's damages were readily ascertainable was clearly erroneous. The district court reasoned that the benefits owed could be calculated with a degree of precision by following the formula and related provisions laid out in the Policy. But the benefits owed under the terms of the Policy were subject to several contingencies that prevented the amount owed from being readily ascertainable. First, the amount owed depended on whether Matthew met the Policy's definition of "totally disabled" or "residually disabled." Second, even if Unum could have been sure that Matthew was "residually disabled" within the meaning of the Policy, the amount of residual disability benefits owed varied from month to month depending on Matthew's loss of net income for that month. In order to calculate Matthew's loss of net income in a given month, Unum needed to know the total income Matthew received for "personal services" performed by him, as well as his "usual and customary" business expenses, for that month. Unum also had to compute Matthew's pre-disability net income and index this figure to the Consumer Price Index for All Urban Consumers published by the Bureau of Labor Statistics ("CPI-U") before it could be used to calculate the amount of residual disability benefits owed. Thus, the calculation of residual disability benefits for each month required Unum to ascertain and review pre- and post-disability "income," consider various Policy definitions, and index Matthew's pre-disability net income by

reference to the CPI-U. Each of these steps was a contingency of the type which under Minnesota law prevents the award of prejudgment interest.

Moreover, even had the benefits owed under the terms of the Policy been readily ascertainable, Matthew prevented Unum from determining the amount of its potential liability by failing to provide the relevant financial information—including summary financial records for APU—until at least September 23, 2004. It would be inequitable to award prejudgment interest under these circumstances. See Potter, 189 N.W.2d at 504 (explaining that a defendant "who cannot ascertain the amount of damages for which he might be held liable cannot be expected to tender payment and thereby stop the running of interest"); Unique Sys., Inc., 622 F.2d at 380 ("Prejudgment interest is charged against a defendant only when he could have computed his potential liability with some degree of certainty . . . ."); cf. In re Estate of Renczykowski, 409 N.W.2d 888, 892 (Minn. App. 1987) (finding that the trial court properly exercised its equitable powers in awarding prejudgment interest); accord Kansas v. Colorado, 543 U.S. 86, 96 (2004) (describing prejudgment interest as an equitable remedy); Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003) (explaining that unless mandated by statute, "an award of prejudgment interest may be an equitable remedy"). Therefore, we conclude the district court erred in awarding prejudgment interest under Minnesota common law.

## C. *Limitations Period*

Unum contends that the district court erred in denying its motion for judgment as a matter of law because Matthew's residual disability benefits claim is barred by the statute of limitations. "We review a district court's denial of a motion for judgment as a matter of law de novo, applying the same standard used by that court." Lawrence v. CNF Transp., Inc., 340 F.3d 486, 491 (8th Cir. 2003) (alterations omitted) (internal quotation marks omitted). "Federal courts sitting in diversity apply the forum state's statute of limitations." Zutz v. Case Corp., 422 F.3d 764, 774 (8th

Cir. 2005). Under Minnesota law, disability insurance policies are governed by Chapter 62A of the Minnesota Statutes. See Ryan v. ITT Life Ins. Corp., 450 N.W.2d 126, 128–29. (Minn. 1990); Laidlaw v. Commercial Ins. Co. of Newark, 255 N.W.2d 807, 811–12 (Minn. 1977). Consistent with Minn. Stat. § 62A.04, the Policy provides that "[l]egal action must be started within three years after the written Proof of Loss is required to be furnished." By statute,

> Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable and in case of claim for any other loss within 90 days after the date of such loss.

Minn. Stat. § 62A.04, subdiv. 2(7).

"Thus, under the statute, the type of claim determines the date proof of loss is due." Weyrauch v. Cigna Life Ins. Co. of N.Y., 416 F.3d 717, 721 (8th Cir. 2005). For claims involving "continuing loss," such as the long-term disability claim here, proof of loss is due ninety days after the termination of the period of disability; for claims involving "any other loss," proof of loss is due ninety days from the discrete loss date. Id. The net effect of this provision and the Policy's three-year limitations period is that an action must be filed within three years and ninety days of the date the insured ceases to be disabled. It follows, therefore, that Matthew had three years and ninety days from the date his disability ended to file suit. Because Matthew has been continuously disabled since 1996, the three-year limitation period never began to run. Thus, his suit was clearly timely.

Unum argues, however, that the "continuing loss" provision applies only in circumstances where the insured was continuously *totally* disabled during the relevant time period. Unum contends that Ryan, Laidlaw and Weyrauch are not only distinguishable on their facts, but actually narrowed the meaning of "continuing loss."

-14-

Like the district court, we reject Unum's interpretation, which reads words into the statute that are not there and misinterprets the Supreme Court of Minnesota's holdings in <u>Ryan</u> and <u>Laidlaw</u> as well as our own interpretation of Minnesota law in <u>Weyrauch</u>.

In <u>Laidlaw</u>, the Minnesota Supreme Court considered the case of a plaintiff who was claiming only total disability benefits, and determined that, as used in section 62A.04, subdiv. 2(7), "the termination of the period for which the insurer is liable" means "the total continuous period of liability, be it short or long." 255 N.W.2d at 811. In <u>Ryan</u>, the insurance policy at issue covered the plaintiff only if he was totally disabled. 450 N.W.2d at 129. Applying <u>Laidlaw</u>, the Supreme Court of Minnesota held that "[w]hen an insured claims total disability benefits . . . , the limitations period will not begin to run until 90 days after termination of the continuous period of disability. Thus, [the plaintiff] cannot be barred by the three-year limitations statute if he has been continuously totally disabled under the terms of the Policy." <u>Id.</u> Because the plaintiff was not claiming residual disability benefits, the issue of continuous residual disability was not before the Court, and, therefore, the Court did not discuss the application of section 62A.04, subdiv. 2(7), under those circumstances. Similarly, in <u>Weyrauch</u>, this Court applied the proof of loss provision to a claim for total disability benefits, concluding that, under those circumstances, "an action must be filed within three years and 90 days of the date the insured ceases to be totally disabled." 416 F.3d at 721. As in <u>Ryan</u>, however, the <u>Weyrauch</u> Court had no occasion to discuss the statute's application to a continuously residually disabled plaintiff.

Unum suggests policy reasons for applying the "continuing loss" provision only when the insured was continuously totally disabled during the relevant time period. However, these arguments fail to recognize the role of the courts. "Our role is to interpret and apply statutes as written, for the power to redraft laws to implement policy changes is reserved to the legislative branch." <u>Doe v. Dep't of Veterans</u>

-15-

Affairs, 519 F.3d 456, 461 (8th Cir. 2008). "[W]hen statutes are straightforward and clear, . . . policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative." Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1159 (8th Cir. 2008) (internal quotation marks omitted). The statute does not distinguish between total and residual disability claims, and we decline Unum's invitation to read this distinction into the statute.[7]  Because Matthew was continuously disabled from 1996 onwards, his residual disability claim was a claim for a "continuing loss."  Therefore, the termination of the period for which Unum is liable has not yet occurred, and the three-year limitation period never began to run. We affirm the district court's conclusion that Matthew's residual disability claim was not barred by the statute of limitations.

## D.  *Other Issues*

Unum also contends that the district court erred in denying its post-trial motion for judgment as a matter of law, or alternatively a new trial, because the issue of residual disability benefits was improperly submitted to the jury and the award of residual disability benefits was contrary to the evidence and excessive.  "The denial of a motion for judgment as a matter of law is reviewed de novo."  Foster v. Time

---

[7]Unum also asserts that Ryan and Laidlaw are distinguishable on their facts because in those cases, the insured's claim for benefits had never been denied by the insurer.  Unum argues that its letter of September 29, 1997, in which it indicated to Matthew that it was unable to accurately adjudicate his claim due to insufficient financial information, constituted a denial of the claim.  As Unum's counsel confirmed during oral arguments, this observation is part of Unum's argument that Ryan, Laidlaw and Weyrauch narrowed the meaning of "continuing loss" such that the "continuing loss" provision applies only to total disability claims. Because Unum is not making an alternative argument, and because Unum's observation does not disturb our conclusion that the "continuing loss" provision applies to residual disability as well as total disability claims, we need not decide whether the letter of September 29, 1997 constituted a denial of Matthew's claim.

Warner Entm't Co., 250 F.3d 1189, 1194 (8th Cir. 2001). "Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for [Matthew]." Id. (internal quotation marks omitted). "The denial of a motion for a new trial . . . will only be reversed upon a manifest abuse of discretion or because the verdict is so grossly excessive as to shock the conscience." Id. (internal quotation marks omitted).

We need not decide whether the district court erred in submitting the residual disability benefits issue to the jury because Unum is estopped from making that argument. Under the invited error doctrine, "[a]n erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." Roth v. Homestake Mining Co., 74 F.3d 843, 845 (8th Cir. 1996). "'The doctrine of invited error applies when the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action.'" United States v. Jewell, 614 F.3d 911, 920 (8th Cir. 2010) (quoting United States v. Mahler, 141 F.3d 811, 815 (8th Cir. 1998)). Here, Unum not only agreed with the district court's announced intention of submitting the issue to the jury, but in fact repeatedly opposed suggestions that the issue ought to be decided by the court. Unum opposed Matthew's motion to bifurcate the trial and submit the residual disability issue to the court or, alternatively, to a special master. Subsequently, during pre-trial hearings, Unum rejected the district court's suggestion that the parties voluntarily agree to bifurcate the claims and have the court determine Matthew's residual disability claim. Having insisted on submitting the issue to the jury, Unum cannot now complain that the district court erred in taking the action that Unum itself requested.

Unum makes two arguments to support its contention that Matthew's evidence of "net income" was flawed and resulted in an excessive verdict. First, Unum asserts that Matthew was estopped from arguing that not all of his taxable income was derived from "personal services" within the meaning of the Policy because this

-17-

representation contradicted Matthew's representations on certain tax returns regarding income for "personal services." We reject this argument for the reasons stated by the district court. Unum has failed to show that "personal services" has the same meaning under the Policy as it does for purposes of Matthew's tax returns. Moreover, the relevant tax returns were filed by Matthew's professional corporation, and Unum has failed to show that Matthew, as an individual, has taken inconsistent positions with respect to "personal services" as defined by the Policy. Second, Unum contends that Matthew's evidence of "net income" was flawed because it excluded income other than that derived from "personal services" performed by him yet included business expenses related to other sources of income. However, Unum presented to the jury all of the objections to Matthew's calculation of "net income" that it now offers on appeal, and the jury rejected them. Based on the evidence in the record, the district court did not abuse its discretion in concluding that the jury's verdict was supported by a legally sufficient evidentiary basis and did not strongly conflict with the greater weight of the evidence so as to warrant a new trial. See Ryan v. McDonough Power Equip., Inc., 734 F.2d 385, 387 (8th Cir. 1984) ("The court should reject a jury's verdict only where, after a review of all the evidence giving full respect to the jury's verdict, the court is left with a definite and firm conviction that the jury has erred.").

Finally, Unum argues that the district court ought to have declared a mistrial based on a post-trial communication from a member of the jury to the court in which the juror expressed doubts about the accuracy of Matthew's method of calculating damages and reported feeling pressured by other jurors to accept Matthew's calculations. "A decision to grant or deny a motion for mistrial is left to the sound discretion of the district court." Sterkel v. Fruehauf Corp., 975 F.2d 528, 532 (8th Cir. 1992). We conclude that the district court did not abuse its discretion in denying Unum's motion for mistrial. Because the juror's e-mail does not indicate that any extraneous information was improperly brought to the jury's attention, that any outside influence was brought to bear on any juror, or that there was any mistake in entering the verdict onto the verdict form, the e-mail does not provide an adequate

-18-

basis to allow an inquiry into the validity of the verdict.  <u>See</u> Fed. R. Evid. 606(b); <u>Scogin v. Century Fitness, Inc.</u>, 780 F.2d 1316, 1319 n.5 (8th Cir. 1985); <u>United States v. Eagle</u>, 539 F.2d 1166, 1170 (8th Cir. 1976) (explaining that upon an inquiry into the validity of a verdict, a juror may only testify regarding "whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror").

## III.  *Conclusion*

Accordingly, we affirm the decisions of the district court in all respects, except that we reverse its award of prejudgment interest under Minnesota common law and remand with instructions to determine whether statutory prejudgment interest is available to Matthew under Minn. Stat. § 549.09.

———————————————————