# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2103

_____

Lenny M. Chapman; Tracy M. Chapman

*Plaintiffs*

v.

Hiland Partners GP Holdings, LLC, a foreign company; Hiland Partners, LP, a foreign partnership; Hiland Operating, LLC, a foreign company

*Defendants*

------------------------------

Lenny M. Chapman; Tracy M. Chapman, as assignees of Hiland Partners GP Holdings, LLC, Hiland Partners, LP, and Hiland Operating, LLC; Hiland Operating, LLC

*Third Party Plaintiffs - Appellees*

v.

Missouri Basin Well Service, Inc.

*Third Party Defendant - Appellant*

B&B Heavy Haul, LLC

*Third Party Defendant*

------------------------------

Missouri Basin Well Service, Inc.

*Cross Claimant - Appellant*

v.

B&B Heavy Haul, LLC

*Cross Defendant - Appellee*

_____

No. 15-2396

_____

Lenny M. Chapman; Tracy M. Chapman

*Plaintiffs*

v.

Hiland Partners GP Holdings, LLC, a foreign company; Hiland Partners, LP, a foreign partnership; Hiland Operating, LLC, a foreign company

*Defendants*

------------------------------

Lenny M. Chapman; Tracy M. Chapman, as assignees of Hiland Partners GP Holdings, LLC, Hiland Partners, LP, and Hiland Operating, LLC; Hiland Operating, LLC

*Third Party Plaintiffs - Appellees*

v.

Missouri Basin Well Service, Inc.

-2-

*Third Party Defendant - Appellant*

B&B Heavy Haul, LLC

*Third Party Defendant*

------------------------------

Missouri Basin Well Service, Inc.

*Cross Claimant - Appellant*

v.

B&B Heavy Haul, LLC

*Cross Defendant - Appellee*
_____

Appeals from United States District Court
for the District of North Dakota - Bismarck
_____

Submitted: December 15, 2016
Filed: July 14, 2017
_____

Before KELLY and MURPHY, Circuit Judges, and MONTGOMERY,[1] District
Judge.
_____

KELLY, Circuit Judge.

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota, sitting by designation.

-3-

In this consolidated appeal, Missouri Basin Well Service, Inc. (Missouri Basin) appeals from the district court's[2] grant of summary judgment to Lenny and Tracy Chapman (the Chapmans) and from the district court's rulings on post-judgment motions. Having jurisdiction under 28 U.S.C. § 1291, we affirm the court's orders granting summary judgment to the Chapmans, granting the Chapmans' Rule 59(e) motion, and denying Missouri Basin's Rule 59(e) motion.

## I. Background

Hiland Partners GP Holdings, LLC, Hiland Partners, LP, and Hiland Operating, LLC (collectively, Hiland) own and operate a natural gas plant in Watford City, North Dakota. Missouri Basin offers trucking services to oil and gas companies in North Dakota. Hiland entered into a Master Service Contract (Hiland MSC) with Missouri Basin in 2008 whereby Missouri Basin, as "Contractor," agreed to perform various services for Hiland. As part of the agreement, Missouri Basin agreed to "indemnify, defend and save harmless Hiland Group . . . from and against any and all claims, demands, judgments, defense costs, or suits . . . in any way, directly or indirectly, arising out of or related to the performance of this Contract." The Hiland MSC included an Oklahoma choice-of-law provision.

B&B Heavy Haul, LLC (B&B) entered into a Master Services Contract with Missouri Basin (B&B MSC) in May 2011, in which B&B, as "Carrier" agreed "to provide the transportation services required by [Missouri Basin] and Customer." In the B&B MSC, B&B agreed to "indemnify, defend, and save harmless [Missouri Basin] and the Customer from any and all claims, demands, judgments, defense costs, or suits . . . in any way, directly or indirectly, arising out of or related to the

---

[2]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

performance of this Contract." The B&B MSC provided for the application of North Dakota law.

On October 18, 2011, Hiland requested Missouri Basin remove water from condensate tanks at the Watford plant. Missouri Basin contacted B&B, which sent Lenny Chapman to the gas plant. Chapman arrived shortly after midnight. He and an employee of Hiland began connecting the tank to the B&B truck that Chapman was driving. An explosion occurred and Chapman was seriously injured.

Chapman and his wife, Tracy, filed an action against Hiland, alleging negligence and loss of consortium. Hiland filed a third-party complaint against Missouri Basin and B&B, contending they were contractually obligated to indemnify and defend Hiland. Missouri Basin cross-claimed against B&B, seeking a defense and indemnification if it was required to indemnify Hiland.

B&B filed a motion for partial summary judgment, contending the B&B MSC did not require it to indemnify Missouri Basin or Hiland for Hiland's negligence. On September 10, 2014, the district court granted B&B's motion, dismissing Hiland's third-party complaint against B&B and Missouri Basin's cross-claim against B&B. As for Hiland's third-party complaint, the court concluded as a matter of law that B&B had no legal duty under the B&B MSC to indemnify Hiland for its own negligence. The court further found that even if the B&B MSC could be construed to require B&B to indemnify Hiland for its own negligence, the contract was void and unenforceable under North Dakota law. With regard to Missouri Basin's cross-claim, the court concluded as a matter of law that B&B had no legal obligation to indemnify Missouri Basin for any indemnification obligations Missouri Basin might have to Hiland.

On October 1, 2014, the Chapmans entered into a "Confidential Release and Settlement Agreement and Addendum" (Settlement Agreement) with Hiland, settling

their claims against Hiland for $10 million. Of that amount, $3 million was to be paid by Hiland and $7 million by Hiland's insurers. As part of the settlement, Hiland assigned all its indemnity claims against Missouri Basin to the Chapmans. The Chapmans filed an amended third-party complaint, asserting, "as assignees of [Hiland]," the "right to pursue the Hiland Defendants' indemnity claims against Missouri Basin arising from the Missouri Basin MSC." The Chapmans sought a judgment "for all amounts that the Hiland Defendants, or others on their behalf, have paid or will pay" to the Chapmans under the Settlement Agreement.

The Chapmans and Missouri Basin filed cross-motions for summary judgment. The parties disputed whether Oklahoma law or North Dakota law governed the Hiland MSC. Applying Oklahoma law, the district court found the indemnity provision in the Hiland MSC fully enforceable. On April 23, 2015, the court entered an order granting the Chapmans' motion for summary judgment, stating: "Missouri Basin is obligated to indemnify Third-Party Plaintiffs for all amounts that have been paid or will be paid as a result of the Confidential Release and Settlement Agreement and the Addendum." The judgment was entered on April 24, 2015.

Both the Chapmans and Missouri Basin filed post-judgment motions. The Chapmans requested the court reduce its judgment to a sum certain: $10 million plus interest. Missouri Basin opposed the Chapmans' motion, contending its indemnity obligation was limited to $3 million—the amount Hiland directly contributed to the settlement. In its post-judgment motion, Missouri Basin asked the court to reconsider its September 2014 order granting summary judgment in favor of B&B and its April 2015 order granting summary judgment in favor of the Chapmans. Missouri Basin argued the two orders were erroneous and contradictory. The court granted the Chapmans' motion and denied Missouri Basin's motion, and issued an amended judgment the next day.

## II. Discussion

Missouri Basin appeals the district court's grant of summary judgment to the Chapmans, asserting the district court erred in applying Oklahoma rather than North Dakota law in construing the Hiland MSC. Missouri Basin also contends the district court erred in its post-judgment rulings.

### A. Summary Judgment

"We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party." Am. Fire & Cas. Co. v. Hegel, 847 F.3d 956, 958 (8th Cir. 2017) (quoting Barkley, Inc. v. Gabriel Bros., 829 F.3d 1030, 1038 (8th Cir. 2016)). Summary judgment is appropriate if there is "no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party." Id. (quoting Shrable v. Eaton Corp., 695 F.3d 768, 770–71 (8th Cir. 2012)).

The parties agree that North Dakota choice-of-law rules apply in this case. See Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 687 (8th Cir. 2001) (when sitting in diversity jurisdiction, district court applies the conflict-of-law rules for the state in which it sits). Relying on the choice-of-law provision in the Hiland MSC, the district court applied Oklahoma law to determine the enforceability of the indemnity provision in the MSC. See Snortland v. Larson, 364 N.W.2d 67, 68–69 (N.D. 1985) (applying Minnesota law to contract case because the parties chose Minnesota law); Am. Hardware Mut. Ins. v. Dairyland Ins., 304 N.W.2d 687, 689 n.1 (N.D. 1981) (noting that "[p]arties may stipulate as to choice of law"); see also Macquarie Bank Ltd. v. Knickel, 793 F.3d 926, 933 (8th Cir. 2015) ("We believe that the North Dakota Supreme Court would resolve this dispute under Texas law, as called for by the Credit Agreement."). Because the district court decided that the Hiland MSC was governed by Oklahoma law, it concluded that "any arguments based on North Dakota

law necessarily fail." We "review de novo the district court's choice-of-law determination." DCS Sanitation Mgmt., Inc. v. Castillo, 435 F.3d 892, 895 (8th Cir. 2006). We likewise review de novo the court's "interpretation of North Dakota law." Kovarik v. Am. Family Ins. Grp., 108 F.3d 962, 964 (8th Cir. 1997).

Missouri Basin acknowledges that the parties chose Oklahoma law to govern disputes under the Hiland MSC and concedes that North Dakota courts generally honor choice-of-law provisions. Missouri Basin does not challenge the district court's conclusion that the Hiland MSC indemnity provision is enforceable under Oklahoma law. Missouri Basin asserts, however, that honoring the choice-of-law provision in this case is contrary to public policy, as expressed in North Dakota's motor carrier anti-indemnification statute. See N.D. Cent. Code § 22-02-10. Section 22-02-10(2) provides, in part:

> Notwithstanding any provision of law to the contrary, any portion of a provision, clause, covenant, or agreement contained in, collateral to, or affecting a motor carrier contract[3] which purports to indemnify, defend,

---

[3]Section 22-02-10 is entitled: "Indemnity agreement in motor carrier transportation contracts void," and the term "motor carrier transportation contract" is used in other parts of the section. See N.D. Cent. Code § 22-02-10(1)(a) (defining "motor carrier transportation contract"); id. § 22-02-10(1)(b) (clarifying that the term "promisee" "does not include a motor carrier that is party to a motor carrier transportation contract with the promisee"). Neither party has argued that by using the term "motor carrier contract" in § 22-02-10(2), the North Dakota legislature meant something different than a "motor carrier transportation contract." Similarly, we see no reason that the North Dakota Supreme Court would construe the term "motor carrier contract" to mean something different than "motor carrier transportation contract"; and we note "motor carrier contract" is not otherwise defined in the statute See Sorenson v. Felton, 793 N.W.2d 799, 803 (N.D. 2011) ("Statutes must be construed to avoid absurd results." (quoting Toso v. Workforce Safety & Ins., 712 N.W.2d 312, 318 (N.D. 2006)). For purposes of this appeal, we use the terms interchangeably.

or hold harmless, or has the effect of indemnifying, defending, or holding harmless, the promisee from or against any liability for loss or damage resulting from the negligence or intentional acts or omissions of the promisee is void and unenforceable to the extent that the loss or damage:

a.  Occurs during the motor carrier's presence on the promisee's premises and is caused by or results from the negligent or intentional acts or omissions of the promisee[.]

N.D. Cent. Code § 22-02-10(2). Missouri Basin argues the Hiland MSC fits all three elements set forth in § 22-02-10(2): (1) the MSC is a motor carrier transportation contract; (2) the harm occurred while the motor carrier was on the promisee's premises; and (3) the harm was caused by the negligence of the promisee.

As relevant here, the statute defines a "motor carrier transportation contract" as "a contract, agreement, or understanding covering the transportation of property for compensation or hire by the motor carrier . . . or a service incidental to activity described in this subdivision, including storage of property." N.D. Cent. Code § 22-02-10(1)(a). Below, Missouri Basin asked the district court to find the indemnification provision in the Hiland MSC against public policy and thus unenforceable under § 22-02-10(1)(a), but failed to address why the Hiland MSC should be considered a "motor carrier transportation contract" in the first instance. On appeal, Missouri Basin simply asserts that the Hiland MSC is a "motor carrier transportation contract" because a significant part of Missouri Basin's business is offering trucking services to gas companies to haul property for hire, and Missouri Basin subcontracted with B&B specifically to "provide the transportation services required by" Missouri Basin and its "customer." Missouri Basin's alternative assertion is that the Hiland MSC "cover[ed]" a "service incidental to the activity described in this subsection"—the transportation of property for hire—because Missouri Basin's actions in requesting B&B to haul water from the condensate tanks at the Hiland plant on October 18, 2011, were "a service incidental" to B&B's

hauling activities under the B&B MSC—a contract the district court found to be a motor carrier contract.[4] Though North Dakota enacted its motor carrier anti-indemnification statute in 2009, neither side has pointed us to any reported cases applying its provisions and we have found none. Our task then is to determine whether North Dakota courts would interpret the Hiland MSC to be a "motor carrier transportation contract" under § 22-02-10. See Kvorarik, 108 F.3d at 964 ("If the North Dakota Supreme Court has not spoken on [the] issue[], we must attempt to predict what that court would decide if it were faced with [it].").

North Dakota courts construe written contracts to give effect to the parties' intent when the contract was executed, ascertaining the intent from the written contract alone, if possible. Rasnic v. ConocoPhillips Co., 854 N.W.2d 659, 661 (N.D. 2014) (citing N.D. Cent. Code §§ 9-07-03 and 9-07-04). Words in a written contract are given their plain, ordinary, and commonly understood meaning "unless they are used by the parties in a technical sense or a special meaning is given to them by usage." Specialized Contracting, Inc. v. St. Paul Fire & Marine Ins., 825 N.W.2d 872, 877 (N.D. 2012) (citing N.D. Cent. Code § 9-07-09).

Nothing in the Hiland MSC identifies it as a contract covering the transportation of property for hire. There is no reference to a "motor carrier" or to transportation services. Notably, there is nothing in the MSC to indicate that it was tailored to Missouri Basin specifically, as opposed to any other contractor or vendor with whom Hiland might contract. In the Hiland MSC, Missouri Basin agrees, as "Contractor," that it will, "from time to time, . . . perform certain work or furnish certain services to Hiland. The jobs contemplated are any such work or services performed by Contractor." Exhibit A, attached to the Hiland MSC, lists the various

---

[4]The district court concluded, without explanation, that the Hiland MSC "cannot be described as a motor carrier contract, and Missouri Basin was not acting as a motor carrier" on October 18, 2011.

-10-

minimum insurance requirements that the different types of contractors or vendors who sign a master service contract with Hiland must maintain. Exhibit A lists 26 types of contractors and vendors, including carpenters, electricians, gate guards, surveyors, and welders. The required insurance coverage includes coverage any contractor might be expected to maintain, such as worker's compensation, employer's liability, comprehensive general liability, and automobile liability, but no insurance a motor carrier might be expected to maintain, such as cargo liability insurance.

In contrast, the B&B MSC—a contract that was undisputedly a motor carrier transportation contract—specifically identified B&B as an "authorized for-hire motor carrier with the necessary authority and licenses to operate in interstate and/or intrastate commerce, and is otherwise qualified, competent and available to provide the transportation services required by Missouri Basin and Customer." In the MSC, B&B agrees to a number of conditions relevant to being a contract for-hire motor carrier, including that it will comply with all laws "regarding the provision of . . . transportation services," that it will ensure "its vehicles and drivers fully comply with the Federal Motor Carrier Safety Regulations established by the DOT," that it would have "the sole and exclusive care, custody and control of each tendered shipment from the time it is delivered . . . for transportation until delivered," and that it assumed "the liability of a common carrier under 49 U.S.C. § 14706."

Unlike the B&B MSC, the Hiland MSC lacks express language identifying it as a contract covering "the transportation of property for compensation or hire by the motor carrier," or "a service incidental to" such activity. We conclude the Hiland MSC, which covered multiple services not limited to transportation, is not a "motor carrier transportation contract" under North Dakota law. Because it is not, N.D. Cent. Code § 22-02-10 does not apply. Accordingly, honoring the Oklahoma choice-of-law provision in the Hiland MSC does not violate a fundamental public policy of North Dakota.

## B. Rule 59(e) motions

Following the court's entry of summary judgment, Missouri Basin and the Chapmans both filed Rule 59(e) motions to alter or amend the judgment. The court denied Missouri Basin's motion but granted the Chapmans' motion. Missouri Basin appeals both rulings. District courts enjoy broad discretion to alter or amend judgments under Rule 59(e), and we reverse only for a clear abuse of discretion. Matthew v. Unum Life Ins. Co. of Am., 639 F.3d 857, 863 (8th Cir. 2011).

"Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct its own mistakes in the time period immediately following entry of judgment." Innovative Home Health Care, Inc. v. P.T.–O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998). Federal courts generally use Rule 59(e) "to support reconsideration of matters properly encompassed in a decision on the merits." White v. N.H. Dep't of Emp't Sec., 455 U.S. 445, 451 (1982). "An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." Matthew, 639 F.3d at 863 (quoting Innovative Home Health Care, 141 F.3d at 1286).

In its order granting the Chapmans summary judgment, the district court ordered Missouri Basin to indemnify the Chapmans "for all sums that have been paid or will be paid" as a result of the Chapmans' settlement with Hiland. In their Rule 59(e) motion, the Chapmans requested the court issue a supplemental judgment stating a sum certain. The court granted the Chapmans' request, clarifying that by using the language "all amounts that have been paid or will be paid," it intended "that Missouri Basin indemnify the Chapmans for the full amount of the settlement, including those amounts paid by Hiland's insurers." The court explained that by rejecting Hiland's tender of defense and request for indemnification, Missouri Basin lost its right to control the litigation and became obligated to reimburse the Chapmans, as assignees of Hiland and its insurers, for the full settlement to which

-12-

Hiland and its insurers had agreed—$10 million. That judgment was not clearly erroneous. See Muskogee Title Co. v. First Nat'l Bank & Trust Co. of Muskogee, 894 P.2d 1148, 1151 (Okla. Civ. App. 1995) (holding that a partially subrogated insurer and its insured may join as co-plaintiffs in an action to recover the entire loss from a third party); Kelly-Springfield Tire Co. v. Mobil Oil Corp., 551 P.2d 671, 675 (Okla. Civ. App. 1975) ("[I]n Oklahoma[,] . . . where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage.") (internal quotation omitted); see also Okla. Stat. tit. 15, § 427.5 ("If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter, suffered by him in good faith, is conclusive in his favor against the former."). The district court did not abuse its discretion in granting the Chapmans' Rule 59(e) motion.

Missouri Basin also argues the district court erred in denying its Rule 59(e) motion, in which it sought reconsideration of the district court's orders granting summary judgment in favor of B&B and the Chapmans. Missouri Basin argued that the two orders were erroneous and contradictory. The district court found the motion untimely, but concluded that, even if it was not untimely, the Rule 59(e) motion was an impermissible attempt to raise new arguments that could have been raised earlier and, because the orders were not inconsistent, lacked merit.

Federal Rule of Civil Procedure 59(e) allows any party aggrieved by a judgment to file a motion to alter or amend the judgment "no later than 28 days after" the judgment has been entered. Fed. R. Civ. P. 59(e). Courts are not allowed to extend the twenty-eight day deadline. Fed. R. Civ. P. 6(b)(2). The district court entered judgment on April 24, 2015. Missouri Basin filed a motion for leave to file documents under seal on May 22, 2015, attaching its Rule 59(e) motion and memorandum in support, and the clerk docketed the motion as well as the attachments

on May 22, 2015. The court granted Missouri Basin's motion for leave to file under seal on May 26, 2015, and Missouri Basin filed the Rule 59(e) and memorandum in support on May 29, 2015. Missouri Basin asserts that all the rules require is that the Rule 59(e) motion and memorandum be delivered to the clerk and so its Rule 59(e) motion was timely. See Fed. R. Civ. P. 5(d)(2) (explaining that "[a] paper is filed by delivering it . . . to the clerk"). B&B asserts that the motion was untimely because the request that the documents be filed was in the memorandum rather than the motion. Neither party has directed us to a local rule or local practice indicating whether a motion docketed as an attachment to a motion to file under seal is considered "filed" in the United States District Court of North Dakota. For purposes of this appeal, we assume without deciding that a motion and memorandum docketed as attachments to a motion to file under seal are "filed" on the day the attachments are docketed, and we proceed to the merits.

In its Rule 59(e) motion, Missouri Basin shifted focus to the B&B MSC, arguing that its claim against B&B for indemnity was within the scope of the indemnification provision of the B&B MSC. That contract provided indemnity for claims "directly or indirectly . . . related to the performance of" the B&B MSC, and Missouri Basin newly contended that its indemnity obligation to Hiland is an indirect claim that is within the scope of the B&B MSC indemnity provision. B&B counters that this argument is an inappropriate attempt to raise a new argument that Missouri Basin could have made in opposition to B&B's partial motion for summary judgment. See United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (Rule 59(e) "motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." (quoting Innovative Home Health Care, 141 F.3d at 1286)).

Missouri Basin concedes that it did not raise this argument until its Rule 59(e) motion, but argues that it could not do so until after the district court issued its April 23, 2015, ruling on the Chapmans' motion for summary judgment because, according

-14-

to Missouri Basin, the ruling was inconsistent with its prior order on B&B's motion for partial summary judgment. But nothing about the district court's orders prevented Missouri Basin from asserting in its earlier filings that its indemnity obligation to Hiland was an indirect claim within the scope of the B&B MSC. In any event, the rulings—which examined two separate contracts, one governed by North Dakota law, and one by Oklahoma law—are not inconsistent. The district court did not abuse its discretion in denying Missouri Basin's Rule 59(e) motion. See Matthew, 639 F.3d at 863.

## III. Conclusion

For the reasons set forth above, we affirm the district court's grant of summary judgment to the Chapmans on their third-party complaint and its orders granting the Chapmans' Rule 59(e) motion and denying Missouri Basin's Rule 59(e) motion.

_____