# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-2706

_____

The Grandoe Corporation

*Plaintiff - Appellee*

v.

Gander Mountain Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 15, 2014
Filed: August 1, 2014

_____

Before WOLLMAN, BYE, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Gander Mountain Company (Gander Mountain) reneged on its oral commitment to purchase $3.05 million worth of winter gloves from the Grandoe Corporation (Grandoe). Grandoe sued Gander Mountain, and a jury awarded Grandoe $1,557,284.40. After the verdict, Gander Mountain moved for judgment as a matter of law or for a new trial, asserting that two written documents rendered the

oral agreement void.  Grandoe filed an unopposed motion for prejudgment interest. The district court[1] denied Gander Mountain's motion and granted Grandoe's motion. Gander Mountain appeals both rulings, and we affirm.

I.

Grandoe is a family-owned manufacturer of gloves and other apparel located in Gloversville, New York.[2]  In the early 2000s, Grandoe began selling winter gloves to Gander Mountain, a national retailer of outdoor sporting goods headquartered in St. Paul, Minnesota.  At that time, it was customary in the glove-making industry for the manufacturer to rely on a retailer's oral commitment for the purchase of gloves. For the first few years of their relationship, Gander Mountain and Grandoe abided by this custom; Gander Mountain would orally agree to purchase a quantity of gloves, Grandoe would manufacture the gloves, and Gander Mountain would periodically issue written purchase orders for smaller shipments of gloves as the need for them arose, the sum of which was consistent with Gander Mountain's oral commitment.

In 2007, Gander Mountain attempted to change this practice by posting a document called the Vendor Buying Agreement (VBA) on its website.  The VBA stated:

> Any communications from Gander Mountain in the form of forecasts, commitments, projections or other estimates provided to Vendor are for

---

[1] The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

[2] The appropriately named Gloversville once produced nearly ninety percent of all gloves sold in the United States, but it has experienced steady economic decline since the 1950s.  Grandoe is one of the few glove manufacturers in Gloversville to remain operational.  See Guy Trebay, Heir to a Glove Town's Legacy, N.Y. Times, Oct. 21, 2009, at E1.

planning purposes only, do not constitute an Order and shall not be binding upon Gander Mountain unless, until and only to the extent that Gander Mountain expressly agrees in writing.

The VBA also stated that it "represent[ed] the entire and integrated Agreement between Gander Mountain and Vendor, superseding all prior negotiations, representations or agreements, written or oral" and that "by accepting [a purchase order], Vendor acknowledges and agrees to be bound by the Vendor Buying Agreement."

After posting the VBA on its website, Gander Mountain e-mailed Grandoe's vice president, asking him to "[p]lease read the attached document that explains our [purchase order] policy changes that will be effective in June." The attached memorandum explained that Gander Mountain was "updating terms and conditions" and that any manufacturer that did business with Gander Mountain would henceforth be bound by the VBA. Grandoe's vice president did not respond to the e-mail or acknowledge in any way that he had read the memorandum or the VBA.

Subsequently, over a series of meetings in 2008, representatives from the two companies negotiated a deal whereby Grandoe would manufacture $3.05 million worth of gloves for Gander Mountain. At one of these meetings, Grandoe's president and vice president presented Gander Mountain's representative with spreadsheets detailing the quantities of gloves Grandoe would produce in each style. Gander Mountain's representative orally approved these spreadsheets. At another meeting, the parties signed a Resource Allowance Contract (RAC), which set forth certain percentage discounts and other ancillary terms that would apply to Gander Mountain's purchase of gloves from Grandoe. The parties also agreed that, consistent with their past practice, some of the logistical aspects of the deal—such as when the gloves would be shipped and how many gloves would be shipped at a time—would be specified in purchase orders that Gander Mountain would send to Grandoe.

On April 16, 2009, after Grandoe had manufactured most of the gloves, Gander Mountain informed Grandoe that it would not purchase all of the gloves that it had orally committed to purchase. Gander Mountain sent Grandoe purchase orders for approximately $940,000 worth of gloves, which Grandoe filled. Gander Mountain then ceased ordering gloves from Grandoe. Grandoe was able to resell some of the gloves it had manufactured for Gander Mountain, but a large number of the gloves—some $1.5 million worth—had been embroidered with Gander Mountain's logo and were largely worthless to anyone else.

Grandoe sued Gander Mountain for breaching its oral commitment. Gander Mountain asserted at trial that the VBA and RAC voided any oral agreement the parties had allegedly reached. It asked the court to exclude evidence of the oral agreement and grant summary judgment to Gander Mountain. The court denied Gander Mountain's requests and submitted evidence of the oral agreement to the jury along with the VBA and RAC, instructing the jury to consider the evidence of all three putative agreements in determining whether Gander Mountain had agreed to purchase $3.05 million in gloves from Grandoe. The jury found that the parties had entered into a valid oral contract and awarded Grandoe $1,557,284.40 in damages.[3] Then, on Grandoe's unopposed motion, the court awarded Grandoe $572,389.20 in prejudgment interest under Minnesota common law, for a total of $2,129,673.60.

II.

Gander Mountain raises three issues on appeal. First, Gander Mountain asserts that the district court erred in permitting the jury to decide whether Gander Mountain had orally agreed to purchase $3.05 million worth of gloves from Grandoe; according

---

[3]The jury further concluded that Grandoe was entitled to the same damages under a theory of promissory estoppel, a conclusion from which Gander Mountain also appeals. Because we conclude that a valid oral contract existed between Grandoe and Gander Mountain, we do not reach this issue.

to Gander Mountain, the VBA and RAC render any such oral commitment void as a matter of law, and the district court should have enforced the parties' written contracts instead of letting the jury decide whether the parties had reached an oral agreement. Second, Gander Mountain asserts that, even if the court properly submitted evidence of the oral agreement to the jury, the jury erred in concluding based on that evidence that the parties had entered into a valid oral agreement. Third, Gander Mountain argues that the district court erred in awarding Grandoe prejudgment interest.

A.

We begin with Gander Mountain's assertion that the VBA and RAC render the putative oral agreement between Gander Mountain and Grandoe legally void, such that the district court erred in submitting evidence of the oral agreement to the jury. Gander Mountain raises three arguments in support of this assertion, two based on the VBA and one based on the RAC. First, Gander Mountain asserts that the VBA's express disclaimer renders any oral commitment it made to Grandoe legally ineffective. Second, Gander Mountain asserts that the VBA is a "final expression of [the parties'] agreement" subject to the protections of Minnesota's parol evidence rule and that "evidence of any prior agreement or of a contemporaneous oral agreement" is inadmissible to contradict this final expression.[4] See Minn. Stat. § 336.2-202. Third, Gander Mountain argues that, in the alternative, the RAC is a "final expression

---

[4]The district court concluded that Gander Mountain had waived this argument. We consider it now only because its resolution coincides with the resolution of Gander Mountain's plain-language argument: as we explain below, if Grandoe accepted the VBA, then both the plain language of the contract and the parol evidence rule would require summary judgment in favor of Gander Mountain. If it did not, then neither argument has any legal force. Because Gander Mountain's VBA-based parol-evidence-rule argument is essentially superfluous, we see no harm in considering it for the sake of completeness.

of [the parties'] agreement" and that evidence of the parties' oral agreement is inadmissible to contradict the RAC. For all of these reasons, according to Gander Mountain, the district court erred in permitting the jury to decide whether the parties had in fact agreed to the exchange of $3.05 million worth of gloves. Instead, Gander Mountain asserts, the district court should have enforced the plain terms of the VBA and RAC, held the oral agreement void as a matter of law, and granted summary judgment to Gander Mountain.

As we explain below, however, neither the VBA nor the RAC voids the oral agreement or prevents evidence of the oral agreement from reaching the jury. First, although it is undisputed that the VBA expressly disclaims oral agreements and purports to be a "final expression of [the parties'] agreement," there is scant evidence that Grandoe ever assented to the terms of the VBA. Without such evidence, the terms of the VBA cannot bind Grandoe. Second, although it is undisputed that the parties agreed to the RAC, the RAC itself is not a "final expression of their agreement" with respect to the purchase of gloves, and thus it does not trigger the parol evidence rule.

1.

Gander Mountain first asserts that the VBA invalidates the parties' putative oral agreement, both because the VBA states so explicitly and because the VBA is a "final expression of [the parties'] agreement" subject to the parol evidence rule. Gander Mountain further asserts that the district court abdicated its responsibility by submitting the question of the VBA's legal effect to the jury, because the meaning of unambiguous contractual language and operation of the parol evidence rule are both questions of law that may be resolved only by the court. See Shaw Hofstra & Assocs.

v. Ladco Dev., Inc., 673 F.3d 819, 825 (8th Cir. 2012); Bib Audio-Video Prods. v. Herold Mktg Assoc., Inc., 517 N.W.2d 68, 71 (Minn. App. 1994).[5]

The relevance of these legal questions, however, depends on the resolution of an underlying factual question: whether or not Grandoe ever assented to the VBA. See Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 532 (8th Cir. 2006) ("Under Minnesota law, the existence of a contract is a question of fact ordinarily decided by the jury."). If Grandoe did accept the VBA, then the express language of the VBA and the parol evidence rule both render the putative oral agreement void and preclude evidence of that agreement from reaching the jury. If it did not, then the VBA is of no legal effect, and evidence of the oral agreement is relevant and admissible. This question of contract formation precedes any question about the legal effect of the contract's terms. See John T. Jones Const. Co. v. Hoot Gen. Const. Co., 613 F.3d 778, 783 (8th Cir. 2010) ("[The parol evidence] rule presupposes the existence of a valid contract." (quoting Walker v. Todd, 280 N.W.2d 512, 514 (Iowa 1938)); 29A Am. Jur. 2d Evidence § 1104; accord Travelers Prop. Cas. Co. of Am. v. Saint-Gobain Technical Fabrics Can. Ltd., 474 F. Supp. 2d 1075, 1081 (D. Minn. 2007) ("[I]ssues of contract formation are antecedent to validity and enforceability issues[.]"

---

[5]Gander Mountain also argues that, in the alternative, the district court did in fact rule on the effect of the VBA, holding as a matter of law that the VBA did not invalidate the oral agreement between Gander Mountain and Grandoe. We conclude that Gander Mountain has misinterpreted the district court's rulings on this issue. The court stated numerous times that it was "not true" that the "terms and conditions [of the VBA] applied as a legal matter to wipe out any contract made [between the parties]," but this is not the same as saying that, as matter of law, the VBA had no effect on the oral agreement. Rather, we think that "not true" in this context most nearly means "not necessarily true," and although the oral and extemporaneous nature of the trial motions in this case make it difficult to rely on the court's precise syntax, the broader context of the court's statements indicate that the court meant only that it was withholding judgment on the legal effect of the VBA until the jury could decide whether Grandoe had assented to the VBA.

(citing Chateau des Charmes Wines, Ltd. v. Sabate USA, Inc., 328 F.3d 528, 530 (9th Cir. 2003)). Thus, the dispositive issue with respect to Gander Mountain's VBA-based arguments is not whether the language of the VBA purports to disclaim oral agreements, either directly or by the operation of the parol evidence rule; rather, it is whether the language of the VBA has any effect on Grandoe in the first place.

When the admissibility of evidence depends on the resolution of a preliminary factual question, the court must either resolve the antecedent factual question or withhold judgment on the contingent legal question until the jury has decided the factual question. This presents a dilemma, since factual questions are usually reserved for the jury, and a court normally does not wait until a jury has made factual findings to rule on legal questions. Federal Rule of Evidence 104 offers a solution to this dilemma:

> As a general principle . . . "[f]oundational facts conditioning the application of technical exclusionary rules," including the hearsay rule, are reserved to the judge; conversely, "[f]oundational facts conditioning the logical relevance of the evidence" are submitted to the jury, at least where there is sufficient evidence to support a jury determination that the condition has been fulfilled.

Commonwealth v. Bright, 974 N.E.2d 1092, 1100-01 (Mass. 2012) (alterations in original) (footnote omitted) (quoting 1 McCormick on Evidence § 53 (7th ed. 2006)); see Fed. R. Evid. 104(a)-(b).[6] In other words, when the resolution of a preliminary factual question determines whether evidence will be excluded because of a technical rule against its admissibility, the court decides the preliminary factual question. See Fed. R. Evid. 104(a). When the preliminary question affects the relevance of

---

[6]"[T]he Federal Rules of Evidence govern the admissibility of evidence in [a] diversity case." Wood v. Valley Forge Life Ins. Co., 478 F.3d 941, 945 (8th Cir. 2007). In any event, Minnesota has adopted Federal Rule of Evidence 104 in relevant part. See Minn. R. Evid. 104(a)-(b).

evidence, by contrast, the court submits the preliminary question to the jury as long as a reasonable jury could find that the preliminary fact exists. See Fed. R. Evid. 104(b). Thus, the propriety of the district court's decision to let the jury decide the preliminary factual question—whether Grandoe assented to the VBA—depends on whether Gander Mountain's VBA-based arguments for excluding the evidence of the oral agreement are based on the logical relevance of that evidence or on some other technical reason for excluding it.

Gander Mountain's argument based on the VBA's express disclaimer is the more straightforward of these arguments and is plainly directed at the relevance of the oral agreement. In Gander Mountain's view, the language of the VBA should be the end of the matter, and any evidence of an oral agreement is irrelevant in the face of the VBA's express disclaimer of all oral agreements.

Less obviously, Gander Mountain's parol-evidence-rule argument also relates to the relevance of the oral agreement. At first blush, the parol evidence rule may look like a "technical exclusionary rule" that calls for the court to decide the factual question underpinning its operation. But unlike technical exclusionary rules such as the rule against hearsay, the parol evidence rule is not a rule of evidence at all; it is a substantive rule of law that defines a contract as the final, written expression of the parties' intent. See Karger v. Wangerin, 40 N.W.2d 846, 849 (Minn. 1950) ("The [parol evidence] rule is not one of evidence, but of substantive law—the writing is the contract, not merely the evidence thereof."). The parol evidence rule excludes evidence of prior or contemporaneous oral agreements not because the evidence of those agreements is potentially prejudicial but because, by definition, those agreements are simply not part of the contract—because, in other words, they are irrelevant. See Casa Herrera, Inc. v. Beydoun, 83 P.3d 497, 502 (Cal. 2004) ("[E]xtrinsic evidence cannot be admitted to prove what the agreement was, not for any of the usual reasons for exclusion of evidence, but because as a matter of law the agreement is the writing itself. Such evidence is legally irrelevant and cannot support

a judgment." (internal citations and quotations marks omitted)); see also Farmers Mut. Hail Ins. Co. of Iowa v. Fox Turkey Farms, Inc., 301 F.2d 697, 701 (8th Cir. 1962) ("Whether in fact there was [an oral] contract is legally irrelevant in light of the parol evidence rule.").

At bottom, therefore, both of Gander Mountain's VBA-based arguments attack the logical relevance of the putative oral agreement. If Grandoe assented to the VBA, then both the language of the VBA and the parol evidence rule render irrelevant any evidence of the oral agreement between Gander Mountain and Grandoe. The relevance of the oral agreement, in other words, was conditioned upon whether Grandoe agreed to the VBA. In these circumstances, it is normally for the jury to decide the preliminary factual question.

We say "normally," because even when the relevance of evidence depends on the resolution of an underlying factual question, the district court itself may resolve the question when no material dispute exists as to its proper resolution. See Fed. R. Evid. 104(b); Fed. R. Civ. P. 56. Gander Mountain asserts that this is the case here because Grandoe's lawyers conceded at trial that the VBA "became part of each transaction when Gander Mountain issued purchase orders that Grandoe accepted." According to Gander Mountain, this stipulation amounts to a concession by Grandoe that it had accepted the VBA's disclaimer and integration provisions and that any oral agreement between the parties was therefore void.

The district court considered and rejected this argument:

> Obviously . . . by stipulating that the [VBA] "became part of each transaction" when a purchase order was issued, Grandoe was not conceding that, when it accepted the first purchase order for $9,996 worth of gloves, it agreed to supersede a previous oral contract for $3.05 million worth of gloves. . . . [I]t would have been utterly irrational for Grandoe's attorneys to have made the concession suggested by Gander

> Mountain, as such a concession would have made this entire litigation, including the trial, a pointless exercise. . . . Instead, Grandoe's concession . . . should be read in light of its argument that each purchase order was a component part of the parties' overall contract. In that light, it is clear that Grandoe did not concede that, by accepting a $9,996 purchase order, it agreed to any terms in the [VBA] that would have wiped out the parties' $3.05 million oral agreement. Whether Grandoe in fact agreed to such terms, therefore, was a factual question for the jury.

See D. Ct. Order of July 3, 2013, at 18. Reviewing this interpretation *de novo*, see Estate of Korby v. Comm'r, 471 F.3d 848, 852 (8th Cir. 2006), we agree with the district court. "A judicial admission must be deliberate, clear, and unambiguous," Choice Escrow & Land Title, LLC v. BancorpSouth Bank, Nos. 13-1879 & 13-1931, slip op. at 23 (8th Cir. June 11, 2014), and while Grandoe's stipulation may have been carelessly worded, it is not a deliberate, clear, and unambiguous concession that the VBA applied to the parties' entire transaction. As the district court noted, such a concession would have been senseless, for it would have immediately defeated Grandoe's entire case. See 1 William Blackstone, Commentaries *60 ("[W]here words bear . . . a very absurd [meaning], if literally understood, we must a little deviate from the received sense of them."). Grandoe's stipulation must instead be read in context. Grandoe's president testified that some employees in Grandoe's shipping and merchandising departments read vendor manuals to determine how to fill purchase orders. In light of this testimony, the more sensible reading of Grandoe's stipulation is as a concession that some of its employees used the VBA—or at least parts of the VBA—to determine the logistics of filling Gander Mountain's purchase orders. These employees, of course, had no authority to bind Grandoe to a contract, see N. Battery Serv. Co. v. Tschida, 196 N.W. 482, 482 (Minn. 1923), and Grandoe's stipulation to this fact does not eliminate the larger factual question whether Grandoe agreed to void an oral agreement for $3.05 million worth of gloves by accepting a purchase order for $9,996 worth of gloves.

-11-

Accordingly, because the operation and effect of the VBA (specifically, whether the VBA's terms rendered the oral agreement irrelevant) depended on the antecedent factual question whether Grandoe ever accepted the VBA, and because this factual question was not free from doubt at trial, the district court did not err in submitting the preliminary factual question of contract formation to the jury and in declining to rule on the legal effect of the VBA until the jury had decided the antecedent factual issue.

This does not mean, however, that the district court was free to abstain from deciding the legal effect of the VBA altogether. When a district court permits a jury to decide a factual question that affects the application of a legal doctrine, the court must instruct the jury on the relationship between the factual issue and the legal issue. See Model Civ. Jury Instr. 8th Cir. 1.03 (2013) ("After you have decided what the facts are, you will have to apply those facts to the law, which I give you in these and in my other instructions."). The proper course of action in this case was for the district court to determine the purported legal effect of the VBA and instruct the jury accordingly. If, for example, the district court found that the VBA purported to be a final expression of the parties' agreement, then the court should have instructed the jury that, if it found that Grandoe had assented to the VBA, then the parol evidence rule precluded it from finding that the parties had come to a prior oral agreement that contradicted the terms of the VBA. See Willner v. Univ. of Kan., 848 F.2d 1020, 1022 (10th Cir. 1988).[7] Instead, the district court submitted evidence of the VBA, the

_____

[7]In that case, the district court instructed the jury as follows:

> If there is written evidence of an offer and acceptance of employment, which sets forth the terms of employment, then the written documents are the only evidence of the agreement. Evidence of prior oral statements concerning the terms of employment may not be used to attempt to alter the terms of the written agreement.

Id.

RAC, and the putative oral agreement to the jury and instructed the jury that "[a] contract may consist of several documents, several verbal agreements, or both." In so instructing the jury, the district court glossed over the potential legal effects of the VBA. If the jury found that the parties had agreed to the VBA, then the parol evidence rule would have required the jury to find that no oral agreement existed.[8] The district court's instructions included no such requirement and permitted the jury to find, for instance, that the parties had agreed to *both* the VBA and the oral agreement—a legal impossibility under Minnesota's parol evidence rule.[9]

To the extent that any error exists, however, it was invited by Gander Mountain. See Roth v. Homestake Mining Co. of Cal., 74 F.3d 843, 845 (8th Cir. 1996) ("An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned."). Gander Mountain and Grandoe jointly submitted proposed jury instructions to the court that omitted any reference to the legal effect of the VBA and instead asked the court to instruct the jury exactly as it did—that "[a] contract may consist of several documents, several verbal agreements, or both." Indeed, Gander Mountain did not even raise its parol-evidence-rule argument based on the VBA until after the verdict,[10] and it spent much of the trial arguing that the VBA and the oral agreement should be read together. Without knowledge that Gander Mountain was making an argument based on the parol evidence rule, the district court could not have been expected to

---

[8]We assume for purposes of this discussion that, as a legal matter, the VBA purports to be a fully integrated agreement subject to the parol evidence rule.

[9]The jury verdict form did not specify the jury's specific findings with respect to each agreement, so it is impossible to tell exactly what the jury concluded about each one.

[10]Gander Mountain did raise a parol-evidence-rule argument based on the RAC in an earlier motion in limine. As we discuss below, the district court properly rejected this argument, and no jury instruction was necessary to reflect that argument.

-13-

instruct the jury about the rule's operation. And since Gander Mountain did not assert instructional error in its post-trial motion, the district court could not have been expected to correct any mistake it may have made. Because any error on the district court's part was invited by Gander Mountain, we conclude the district court did not commit reversible error in declining to rule on the legal effect of the VBA, either directly or by instructing the jury as to its effect.

2.

Gander Mountain's next argument focuses on the RAC. Specifically, Gander Mountain asserts that the parol evidence rule bars consideration of a putative oral agreement that contradicts the RAC because the RAC is "a writing intended by the parties as a final expression of their agreement[.]" See Minn. Stat. § 336.2-202. In contrast to the VBA, there is no dispute that the parties agreed to the RAC—representatives from both companies signed it. Instead, the problem with the RAC is that it did not represent a "final expression of [the parties'] agreement" for the purchase of gloves.

The RAC is a two-page document that sets forth certain discounts and allowances that apply in the event that Gander Mountain and its vendor agree to a manufacturing contract. The RAC includes an integration clause that states:

> The parties agree that this Agreement is the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all previous negotiations, oral expressions, commitments, and writings. This Agreement may not be superseded by any terms, conditions, or restrictions on any contract, order, copy instructions or other matter unless Gander Mountain consents thereto in writing. This Agreement may not be modified or amended . . . except in a writing signed by all parties[.]

-14-

The RAC includes few other terms. Indeed, as it noted, the district court had difficulty construing the RAC as a contract at all because it does not bind anyone to do anything; it simply sets forth ancillary terms that apply in the event that the parties agree to a deal. See D. Ct. Order of July 3, 2013, at 22. Another way to read the RAC is as a contract with a condition precedent—that condition being that the parties agree to another contract for the sale of gloves. See Lake Co. v. Molan, 131 N.W.2d 734, 739 (Minn. 1964). And herein lies the problem with Gander Mountain's argument: notwithstanding the RAC's integration clause, it does not appear that the parties intended the RAC to be the final expression of their agreement. Rather, the RAC explicitly contemplates a future contract for the sale of gloves, and it does not specify that such a contract must be in writing. The RAC's integration clause itself reflects this understanding: it states that the RAC "is the entire agreement between the parties *with respect to the subject matter of this Agreement*" (emphasis added), but the subject matter of the RAC does not include the actual sale or purchase of gloves. If that were the case, then no gloves would ever have been exchanged, since the RAC does not include a quantity term. The district court thus did not err in concluding that the RAC did not render evidence of the oral agreement inadmissible.

B.

Gander Mountain asserts, however, that even if the court properly admitted evidence of the oral agreement between Gander Mountain and Grandoe, the jury erred in concluding based on that evidence that the parties had agreed to such a contract. In assessing Gander Mountain's challenge to the jury's conclusion, we must affirm the jury's verdict unless "after viewing the evidence in the light most favorable to the verdict, we conclude that no reasonable juror could have returned a verdict for the non-moving party." Ryther v. KARE 11, 108 F.3d 832, 836 (8th Cir. 1997).

"A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such

-15-

a contract." Minn. Stat. § 336.2-204. Generally, such conduct must include both a valid offer and a valid acceptance. See White Consol. Ind., Inc. v. McGill Mfg. Co., 165 F.3d 1185, 1190 (8th Cir. 1999). "The test of whether a contract has been formed is an objective one, to be judged by the words and actions of the parties and not by their subjective mental intent." Am. Fed'n of State, Cnty, & Mun. Emps., Council #14 v. City of St. Paul, 533 N.W.2d 623, 627 (Minn. Ct. App. 1995).

Gander Mountain essentially concedes that, but for the VBA, the parties would have had a valid oral agreement for the purchase of gloves. Indeed, that is exactly how the parties did business prior to 2007. Gander Mountain argues, however, that the parties could not have reached an oral agreement given the existence of the VBA, which expressly disclaims oral agreements. The jury's error, according to Gander Mountain, is not that it wrongly found the prima facie elements of an oral agreement; it is that the jury failed to find the prima facie elements of a second, written agreement—the VBA—that purports to invalidate the first. Had the jury correctly found that the parties had agreed to the VBA, Gander Mountain argues, it could not reasonably have concluded that the parties also agreed to an oral contract for $3.05 million worth of gloves.

Grandoe never signed the VBA, but Gander Mountain asserts that Grandoe accepted the VBA at two points: first, when Gander Mountain e-mailed Grandoe informing it of the VBA's existence on Gander Mountain's website; and second, when Grandoe accepted Gander Mountain's first purchase order. The evidence that Grandoe assented to the VBA at either of these two points is sparse. Grandoe never replied to Gander Mountain's e-mail or in any way manifested its acceptance of the VBA. "Ordinarily, mere silence does not amount to an acceptance." See Gryc v. Lewis, 410 N.W.2d 888, 892 (Minn. Ct. App. 1987). More generally, an acceptance must be communicated in a manner that is "reasonable in the circumstances." Minn. Stat. § 336.2-206. Given the course of dealing between Grandoe and Gander Mountain, we do not find it reasonable to infer from Grandoe's silence that it had

-16-

assented to the VBA. The parties had relied on oral commitments for years, and there is no evidence that the parties had previously changed the terms of their business relationship in this manner.

The magnitude of the contractual modifications contemplated by the VBA makes an inference of assent even more unreasonable. Had Gander Mountain desired to change only the ancillary terms of the parties' arrangement, perhaps it would be reasonable to infer from Grandoe's silence that it had agreed to the change. But Gander Mountain's modifications fundamentally changed the way the parties did business. After the VBA, oral commitments from Gander Mountain (which had formed the bedrock of the parties' business relationship) were no longer enforceable under the terms of the VBA. Given these stakes, Grandoe's silence does not by itself give rise to a reasonable inference of acceptance, especially since Gander Mountain continued to make oral representations to Grandoe even after posting the VBA on its website.

Nor is there any evidence that Grandoe accepted the VBA by accepting Gander Mountain's purchase orders. As evidence of this alleged acceptance, Gander Mountain cites the VBA itself, which states that "by accepting a[] [purchase order], Vendor acknowledges and agrees to be bound by the Vendor Buying Agreement." But this incorporation goes the wrong way; the important question is not whether the VBA incorporates the purchase orders but whether the purchase orders—the contracts that Grandoe actually accepted—incorporate the VBA. Without evidence that Grandoe assented to the VBA itself, it does not matter whether the VBA purports to incorporate itself into the purchase orders.

Thus, Gander Mountain's argument that the purchase orders incorporate the VBA depends on the terms of the purchase orders themselves. Unfortunately, neither party offered the purchase orders as evidence, so it is impossible to tell what they actually say. Gander Mountain has offered several explanations for this omission.

In its opening brief, Gander Mountain noted that the specific purchase orders it had issued to Grandoe existed only electronically and have since been erased. But the general terms of Gander Mountain's purchase orders—specifically, whether they refer to and incorporate the VBA—are far more relevant to this case than the specific quantities and dates contained in the purchase orders that Gander Mountain had issued to Grandoe. Gander Mountain could have just as easily proved the relevant terms of the purchase orders by submitting a blank purchase order. At oral argument, Gander Mountain's counsel stated that he had been prevented from submitting the purchase orders by Grandoe's stipulation that the VBA "became part of each transaction when Gander Mountain issued purchase orders that Grandoe accepted." This assertion is unpersuasive. Grandoe never moved in limine to exclude evidence of the purchase orders, the court never ruled that the purchase orders were inadmissible, and as far as we can tell Gander Mountain never attempted to submit them as evidence. Moreover, except in rare circumstances, see Old Chief v. United States, 519 U.S. 172, 190 (1997), a party's stipulation cannot render evidence irrelevant, for the plaintiff is entitled to "prove its case free from any defendant's option to stipulate the evidence away[.]" Id. at 189. Perhaps Gander Mountain's counsel meant that he thought Grandoe's stipulation made it unnecessary to submit the purchase orders, but we find this justification equally unavailing. As early as the summary judgment hearing, Gander Mountain was on notice that the meaning of Grandoe's stipulation was open to question.

This evidentiary omission is ultimately fatal to Gander Mountain's argument that Grandoe accepted the VBA. As the party asserting the applicability of a contract (the VBA), Gander Mountain bears the burden proving the existence of that contract under Minnesota law. See Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc., 646 NW.2d 904, 907-08 (Minn. Ct. App. 2002). Without any evidence as to what the purchase orders did or did not say, there is no basis for us to say that the jury erred in concluding that they did not incorporate the VBA. Moreover, the jury was entitled to consider the surrounding circumstances of the transaction, including, for instance,

how illogical it would have been for Grandoe to forgive Gander Mountain's commitment to buy $3.05 million worth of gloves by accepting a purchase order for $9,996 worth of gloves. See Hough v. Harvey, 410 N.W.2d 53, 55 (Minn. Ct. App. 1987). Given the parties' course of dealing and the absence of any evidence showing that the purchase orders incorporated the VBA, we cannot say that the jury had no basis upon which to conclude that Grandoe's acceptance of a purchase order did not constitute an acceptance of the VBA.

Accordingly, taking the evidence in the light most favorable to the verdict, we conclude that a reasonable jury could have found that the parties orally agreed to the sale of $3.05 million worth of gloves and that no written contract voided that oral agreement.

C.

Finally, Gander Mountain asserts that the district court erred in awarding Grandoe prejudgment interest. We hold that the district court's ruling on this point was not clearly erroneous. See Matthew v. Unum Life Ins. Co. of Am., 639 F.3d 857, 864 (8th Cir. 2011) (standard of review).

Under Minnesota common law, a prevailing plaintiff is entitled to prejudgment interest starting from the time the plaintiff's claim accrues if, at that time, the defendant could have readily ascertained the plaintiff's asserted damages "by computation or reference to generally recognized standards[.]" Potter v. Hartzell Propeller, Inc., 189 N.W.2d 499, 504 (Minn. 1971). "The underlying principle is that one who cannot ascertain the amount of damages for which he might be held liable cannot be expected to tender payment and thereby stop the running of interest." Id. The parties do not dispute that Grandoe's claim against Gander Mountain accrued on April 16, 2009, the date on which Gander Mountain informed Grandoe that it would not purchase all of the gloves specified in the oral agreement.

-19-

Gander Mountain asserts two reasons that Grandoe's damages were not readily ascertainable on that date. First, Gander Mountain argues that, as of April 16, 2009, Grandoe's damages varied widely depending on whether one factors in Grandoe's attempts to mitigate its damages by reselling the gloves it had produced for Gander Mountain. Second, Gander Mountain asserts that Grandoe's damages were subject to unknown contingencies on April 16, 2009, because Gander Mountain did not know (1) how many gloves Grandoe had already produced, or (2) how many of those gloves Grandoe could rebrand and resell.

We find neither argument persuasive. As to Gander Mountain's first argument, we see only one way of calculating damages in this case. Gander Mountain argues that the damage calculation differs depending on whether one takes into account Grandoe's attempt to mitigate its damages, but "[i]t is a well-settled principle of contract law that a nonbreaching party is duty-bound to use reasonable diligence to mitigate damages." Deutz-Allis Credit Corp. v. Jensen, 458 N.W.2d 163, 166 (Minn. Ct. App. 1990). Gander Mountain has provided no case law support for its assertion that there is more than one way to calculate damages in this case, and in the absence of multiple ways to calculate damages, we cannot say that Grandoe's damages were not readily ascertainable.

With respect to Gander Mountain's second argument, we do not believe that the "unknown contingencies" that Gander Mountain asserts existed on April 16, 2009, prevented Gander Mountain from ascertaining Grandoe's damages at that time. Grandoe knew on that date exactly how many gloves it had produced, and there is no evidence that Grandoe intentionally withheld that information from Gander Mountain or otherwise acted in bad faith.[11] Moreover, although Grandoe could not have known

---

[11]That Grandoe did not volunteer this information does not mean that Gander Mountain could not have readily ascertained it. Cf. Matthew, 639 F.3d at 865-66 (holding that it would be inequitable to award prejudgment interest where the plaintiff "prevented [the defendant] from determining the amount of its potential liability" by

on April 16, 2009, exactly how many gloves it would be able to resell, Minnesota law generally presumes that a damaged seller will be able to resell only generic goods—in other words, that Grandoe would have been able to resell only those gloves that it had not embroidered with Gander Mountain's logo. See Minn. Stat. § 336.2-709 ("[T]he seller may recover . . . the price . . . of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing."). This distinction provides a "generally recognized standard[]" by which Gander Mountain could have calculated its liability. At the very least, therefore, Gander Mountain could have readily ascertained exactly how many gloves Grandoe had produced and approximately how many it could resell as of April 16, 2009.

## III.

We affirm the district court's denial of Gander Mountain's motion for judgment as a matter of law or for a new trial, and we affirm its grant of prejudgment interest to Grandoe.

_____

delaying the production of relevant financial information). As noted above, the requirement that damages be "readily ascertainable" is designed to protect a defendant who is unable to settle a lawsuit by tendering payment to the plaintiff; it generally does not place an affirmative obligation on a plaintiff to provide information about its damages, as long as the plaintiff complies with the defendant's reasonable requests for information relating to its potential liability.