# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 2, 2020

Lyle W. Cayce
Clerk

No. 20-60121
Summary Calendar

IMPERIAL INDUSTRIAL SUPPLY COMPANY, *doing business as* DURAMAX POWER EQUIPMENT, *doing business as* FACTORY AUTHORIZED OUTLETS; STEVEN L. FELDMAN; ANTHONY BUSTOS; ROBERT RASKIN,

*Plaintiffs—Appellees*,

*versus*

QUINTINA MARIE THOMAS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:19-CV-129

Before HAYNES, WILLETT, and HO, *Circuit Judges*.

PER CURIAM:*

Quintina Marie Thomas appeals the district court's order vacating an alleged arbitral award granted in her favor against Imperial Industrial Supply

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-60121

Company d/b/a Duramax Power Equipment and/or Factory Authorized Outlets. In light of the utter lack of any evidence of any arbitration agreement in the first place and no merits to her other challenges, we AFFIRM the district court's judgment.

## I. BACKGROUND

This appeal concerns the validity of arbitration proceedings conducted by SITCOMM Arbitration Association and two of its employees (collectively, "SITCOMM") in a dispute between Quintina Maria Thomas ("Thomas") and Imperial Industrial Supply Company and its three associates (collectively, "Imperial"). In October 2018, Thomas's home in Hawaii caught on fire. Thomas claimed that a power generator, purchased from Imperial, caused the fire. Thomas initiated arbitration proceedings against Imperial.

She began by sending Imperial a document titled "Conditional Acceptance for the Value/For Proof of Claim/Agreement" ("Alleged Agreement") which purported to be a "binding self-executing irrevocable contractual agreement" evidencing Thomas's acceptance of Imperial's offer. The Alleged Agreement did not define what Imperial offered but stated that "a product sale purchase agreement and warranty for the [generator] creat[ed] an ongoing contractual relationship between [Imperial] and [Thomas]." The Alleged Agreement further provided that Imperial would need to propound fifteen different "Proofs of Claim" to Thomas in order to avoid (1) breaching the Alleged Agreement; (2) admitting, by "tacit acquiescence," that the generator caused the fire; and (3) participating in arbitration proceedings.

Then, Thomas sent Imperial two notices related to the Alleged Agreement. The first notice purported that Imperial breached the Alleged Agreement by failing to provide the proofs of claim. This notice allowed

2

Imperial to cure the alleged breach by providing the proofs of claim within three days. In addition, the notice stated that Imperial's refusal to follow the curing mechanism would result in Imperial's admission and confessed judgment to the alleged breach. The second notice stated that Imperial owed the balance for the "entire contract value"[1] because it did not cure the breach.

A few months later, Imperial received the "Notice of Arbitration Hearing" from SITCOMM, a Missouri based arbitration association. This notice provided a date and time for a hearing but did not provide a location for the hearing or a description of the matter under review. "[O]ut of an abundance of caution," Imperial submitted several objections.

Without responding to Imperial's objections, SITCOMM sent Imperial the "Final Arbitration Award" on June 24, 2019, which awarded Thomas $1.5 million for breach of the Alleged Agreement. The Final Arbitration Award indicated the basis of arbitration was Imperial's consent by "tacit acquiescence."

Imperial sued Thomas and SITCOMM, challenging the final arbitration award in federal district court. Imperial requested (1) a declaratory judgment that there was no valid contract to support the arbitration proceedings; (2) an order vacating the final arbitration award; and (3) injunctive relief against any enforcement of the final arbitration award. In accordance with the complaint, Imperial moved to vacate the final arbitration award. The district court granted Imperial's motion to vacate and dismissed the case with prejudice. Thomas timely appealed.

---

[1] The entire contract value was for $500,000.

No. 20-60121

## II.  STANDARD OF REVIEW

Ordinarily, "[w]e review a district court's order confirming or vacating an arbitration award de novo[.]" *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 472 (5th Cir. 2012).  Due to the "strong federal policy favoring arbitration, judicial review of an arbitration award is extraordinarily narrow." *Id.* at 471–72 (citation omitted).  However, "[b]ecause arbitration is simply a matter of contract between the parties, the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate," which is "governed by ordinary state-law contract principles." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (internal quotations and citations omitted).  We will apply the federal policy favoring arbitration only *after* the existence of a valid agreement to arbitrate is found. *See Klein*, 710 at 236–37; *see also Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 219 (5th Cir. 2003) (holding that when "a party attacks the very existence of an agreement . . . the courts must first resolve that dispute").

## III.  DISCUSSION

On appeal, Thomas argues that the district court lacked jurisdiction to adjudicate this case because she received untimely notice of Imperial's motion to vacate the arbitral award, as required by the Federal Arbitration Act ("FAA").[2]

The FAA's principal purpose is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (citations omitted).  It was enacted to

---

[2] The Appellees asserted jurisdiction in the district court based upon diversity jurisdiction.  28 U.S.C. § 1332.  On appeal, Thomas does not contest that there is complete diversity of citizenship and that the amount in controversy exceeds $75,000.

address the "longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). As a result of the FAA, there is a "strong federal policy favoring arbitration." *ConocoPhillips Co.*, 674 F.3d at 471. However, the language of the FAA indicates a "contract" or "agreement" is necessary to invoke the mandatory arbitration provision. *See* 9 U.S.C. § 2; *Concepcion*, 563 U.S. at 339 (recognizing the "fundamental principle that arbitration is a matter of contract").

We apply Mississippi law in determining whether there was a valid contract.[3] In Mississippi, "[t]he elements of a valid contract are: (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) *mutual assent*, [and] (6) no legal prohibition precluding contract formation." *Woodruff v. Thames*, 143 So. 3d 546, 554 (Miss. 2014) (quotation omitted) (emphasis added). As the district court noted, "nothing in the documents submitted in the record demonstrate[d] a scintilla of mutual assent. There [wa]s no document in the record signed by [Imperial]," including the Alleged Agreement that forms the basis of the arbitral award. *Imperial Indus. Supply Co. v. Thomas*, No. 2:19-CV-129-KS-MTP, slip op. at 4 (S.D. Miss. Jan. 8, 2020). We agree; "tacit acquiescence" to the Alleged Agreement is insufficient to constitute a valid contract.

Tacit acquiescence between relative strangers ignores the basic tenets of contract law. *See* RESTATEMENT (SECOND) OF CONTRACTS § 17

---

[3] The parties do not contest the district court's application of Mississippi law. We agree with the district court that Mississippi law is appropriate in this case.

(1981) (acknowledging, with certain exceptions, the formation of a contract requires a "manifestation of mutual assent"); *Magee v. Nationstar Mortg., LLC*, No. 5:19-MC-017-H, 2020 WL 1188445, at *2 (N.D. Tex. Mar. 11, 2020) (acknowledging tacit acquiescence to the terms of an arbitration agreement is "contrary to hornbook contract law") (citations omitted); *see also O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 311–12 (5th Cir. 2020) (noting that an enforceable arbitration agreement requires a "meeting of the minds"). Mississippi contract law follows general common law principles on what constitutes mutual assent.  *See Mathis v. Jackson Cty. Bd. of Supervisors*, 916 So. 2d 564, 569 (Miss. Ct. App. 2005) ("The term 'mutual assent' means a 'meeting of the minds of both ... parties to a contract; the fact that each agrees to all the terms and conditions, in the same sense and with the same meaning as the others.'") (quoting BLACK'S LAW DICTIONARY (6th ed. 1991)).  While there may be exceptions in cases involving parties with longstanding relationships,[4] generally speaking, "silence or inaction does not constitute acceptance of an offer." *Norcia v. Samsung Telecomms Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017); *see Grandoe Corp. v. Gander Mountain Co.*, 761 F.3d 876, 888 (8th Cir. 2014).

If Thomas's argument was valid, it would turn the notion of mutual assent on its head in ordinary purchase cases like this one:  buy an item from a dealer or manufacturer, then mail a letter saying "you agree if you don't object," and you can have whatever deal you want if the dealer/manufacturer

---

[4] "Silence may operate as acceptance where, because of previous dealings, the offeree has given the offeror reason to understand that silence is intended as a manifestation of assent."  *Brown v. Ally Fin. Inc.*, No. 2:18-CV-70-KS-MTP, 2019 WL 6718672, at *2 (S.D. Miss. Dec. 10, 2019), *appeal dismissed sub nom.*, No. 20-60122, 2020 WL 4757041 (5th Cir. June 8, 2020) (quoting *R.C. Const. Co., Inc. v. Nat'l Office Sys., Inc.*, 622 So. 2d 1253, 1255-56 (Miss. 1993)).  There is no such relationship of previous dealing here.  Thomas bought the power generator at issue and then started sending the alleged "agreements" to Imperial.

doesn't respond.  Thomas fails to cite a single case that would support such a ridiculous notion.  Other than buying a power generator from Imperial, Thomas has offered no evidence of previous dealings; certainly she offers no evidence that would support silence as acquiescence.  The conspicuous lack of mutual assent[5] means that a valid contract was never formed.[6]

Section 12 requires that "[n]otice of a motion to vacate . . . an award must be served upon the adverse party . . . within three months after the award is filed or delivered."  9 U.S.C. § 12.  Thomas argues that this section is jurisdictional in nature and that Imperial failed to timely provide notice. We need not decide whether this section applies when there is no valid agreement to arbitrate or whether this provision is jurisdictional because we conclude that Appellees are correct that the motion to vacate was served when it was deposited in the mail.  Thomas's "refusal" of the service does not change that.  *See Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1168 n.5 (5th Cir. 1980) ("Fed.[]R.[]Civ.[]P. 5(b) provides that service is complete upon mailing. Moreover, refusal to accept mail does not vitiate service.")

---

[5] Thomas's unilateral attempt to impose treble penalties on a non-party is not well taken. We observe this case is one of many involving dubious SITCOMM arbitration awards.  *See*, *e.g.*, *PennyMac Loan Servs., LLC v. Sitcomm Arbitration Ass'n*, No. 2:19-CV-193-KS-MTP, 2020 WL 1469458 (S.D. Miss. Mar. 26, 2020); *Magee*, No. 5:19-MC-017-H, 2020 WL 1188445; *Nichols v. U.S. Bank, Nat'l Ass'n*, No. 2:19-MC-162, 2020 WL 61049 (S.D. Miss. Jan. 6, 2020); *Brown*, No. 2:18-CV-70, 2019 WL 6718672.

[6] Thomas also argues that her due process rights were violated because Imperial "intentional[ly] served all of their ongoing service of process of legal notices to fabricated addresses."  However, Thomas did not raise her due process argument at the district court level and has thus waived this argument on appeal.  *See United States v. Bigler*, 817 F.2d 1139, 1140 (5th Cir. 1987).

No. 20-60121

(citations omitted).  Thus, we need not address Thomas's § 12 arguments further.[7]

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the district court's order granting Imperial's motion to vacate the arbitral award.

---

[7] She has also either waived or failed to sustain her other challenges to the service of process and personal jurisdictional issues.